# MEMORANDA

---

LOUISA DOOLITTLE, Respondent, *v.* ANNA STONE, Administratrix, etc., Appellant.

In an action against an administrator for an accounting, as to funds in the hands of his intestate belonging to plaintiff, the latter offered in evidence a book of accounts and memoranda kept by the intestate, in regard to the fund. Defendant thereupon offered a similar book, kept for a period subsequent to that embraced in the first book; and he sought to prove therefrom a statement entered therein to the effect that loans of moneys belonging to plaintiff made by F. in his own name had all been paid without exception, and the proceeds invested in plaintiff's name. This book did not refer to the first book or bring down a balance of account. *Held,* that the evidence was properly excluded.

(Argued October 11, 1892; decided November 29, 1892.)

APPEAL from judgment of the General Term of the Supreme Court in the fifth judicial department, entered upon an order made March 29, 1892, which affirmed a judgment in favor of plaintiff, entered upon the report of a referee.

This was an action for an accounting by defendant as administratrix of Joel Stone as to a fund in his hand belonging to plaintiff.

The following is the opinion in full:

"The result reached by the learned referee before whom this case was tried seems to have astonished him, and at the outset surprised us. The intestate took the plaintiff's money to the amount of twenty-five thousand dollars in the year 1855, and a few years thereafter for the purpose of investment, and in 1886 that sum is found to have increased in his hands to the amount of one hundred and twenty-five thousand dollars. Where interest at seven per cent is compounded steadily and

without delay a given sum doubles in about ten years, and during the thirty years of this agency the original twenty-five thousand dollars would have grown to two hundred thousand dollars if there had been no losses and no delays, but a steady persistence in the process of accumulation. The losses are said to have reached thirty thousand dollars, and undoubtedly for very brief periods, portions of the money lay idle and unproductive, and very probably some amounts were paid to and used by the plaintiff herself. Obviously, the possible results indicated were not reached, for in 1868 it is conceded that the amount in Stone's hands was about thirty-two thousand dollars. Of this, eighteen thousand dollars was in United States bonds drawing comparatively moderate rates of interest but worth a considerable premium. Stone sold them and began the process of investment in western town and county bonds yielding a net interest of ten per cent. At that rate compounded the fund would double in about seven years, and so become in 1875 sixty-four thousand dollars, and in 1882 one hundred and twenty-eight thousand dollars. The referee finds in Stone's hands at that date only about ninety-four thousand dollars, which leaves a margin of thirty-four thousand dollars for losses and delays or withdrawals for expenses. It is shown that the plaintiff led a very inexpensive life, dwelling mostly with friends who took her services in the place of board, and not expending upon herself more than about three hundred dollars a year. So that in a general way we can see that the ultimate result is not only possible, but upon the facts also probable.

"We may apply another general test to the situation developed by the evidence with a view of determining whether we ought to be surprised at the referee's conclusion. At Stone's death all his securities, held either as owner or agent were found to amount to about one hundred and fifty-one thousand dollars. Of these about sixty-four thousand dollars in amount were admitted to be plaintiff's and were placed in her possession, leaving eighty-seven thousand dollars claimed to belong to Stone. In addition he had purchased and paid for during the period of his agency two farms at a cost of about eighteen thousand dollars, so that his accumulations

reached about one hundred and five thousand dollars, or some forty thousand dollars more than plaintiff's. There is no proof that he started the process of accumulation in 1855 with a capital equal to that possessed by her. That he had some money at interest is testified to by his wife, but nothing indicates that it was a large amount. Assuming it to have been equal to that which he received from the plaintiff, it remains to be explained how it happened that his own capital grew to forty thousand dollars more than hers, or adding the salt stock and gifts to his wife and children, to fifty or sixty thousand dollars in excess of the capital of the plaintiff. His farms may have yielded a small interest beyond the support of his family, but it is difficult to see looking back upon the manner in which the investments were made, why all the losses fell upon the plaintiff and her capital grew so much more slowly than his. These general views which suggest not accurate but approximate results, lessen our surprise at the amount of the judgment and enable us to rest upon the facts found by the referee without grave anxiety.

" Nevertheless we have examined the accounts with such patience and care as time and opportunity permitted, to see that the proof supports the findings and the better to appreciate the argument of the appellants upon their exceptions. That examination has shown not only that the findings have some evidence to support them, but that they scarcely admit of contradiction, and at all events are quite beyond our criticism or review upon this appeal.

" It remains to consider the exceptions upon which the defendant relies. It is claimed in her behalf that the burden of proof was erroneously cast upon her. It is not denied that ordinarily she would be required to account and compelled to disclose and explain the manner in which the duties of the agent were performed, but it is argued that the plaintiff is estopped from demanding such an account by her acquiescence in the method adopted by Stone which consisted simply in a separation and identification of her securities and that the defendant should be charged only with simple interest and without rests. The burden of showing that Stone received a larger rate of interest than that prescribed

in this state and steadily and regularly compounded it, was upon the plaintiff. The referee so held and in no instance ruled to the contrary. The plaintiff successfully lifted that burden. She proved the receipt by him of ten per cent interest down to 1882 and of seven per cent thereafter ; that interest received was regularly and steadily invested, and made up the account from Stone's memoranda and bank account, without reliance upon legal presumptions as such but resting where direct proof was not available upon satisfactory inferences fairly flowing from established facts. It is not claimed that any erroneous ruling was made upon this branch of the case and we are unable to see that the referee unconsciously shifted the burden to the defendant. The details of the proof justify his conclusions.

" The principal exception pressed upon our attention grows out of the refusal of the referee to admit in evidence what is known in the case as exhibit M. The plaintiff had put in evidence a book of accounts and memoranda kept by Stone as evidence against his representative. That began in 1873 and ended in 1878. It was not a regular book of account, admissible in evidence after preliminary proof in and of itself, but stood upon the ground of admissions made by Stone of which the plaintiff chose to avail herself. She put them all in evidence. Nothing in the book was rejected or excluded and the defendant had the full benefit of the whole declaration in all its parts. But exhibit M. was another and distinct and separate book, making no reference to any other, not even bringing down a balance of account, and beginning in 1883 or more than four years later than the one put in evidence by plaintiff. It is entitled ' cash book kept for Louisa Doolittle,' and after entries of interest received and payments made, contains, under date of March 10, 1885, the following statement : ' All loans in my name belonging to L. Doolittle have now been paid except B. Mundy and proceeds invested in her name.' It is very clear that this was an independent declaration in his own behalf which constituted no part of any account and did not become such because entered in a book containing accounts. It was no more admissible in defendant's favor than if it had been an oral declaration by Stone made in 1885 to

some third person. The general principle invoked on behalf of the appellant that the whole of an admission should be taken together does not reach a separate, distinct, and disconnected admission made at a different time from that put in evidence. There was no error in rejecting the offered proof."

" A question was raised on the argument over the amount of compensation allowed and credited to the agent but we are unable to see in it any error of law. It was peculiarly a question of fact for the judgment of the referee based upon all the circumstances of the case. We cannot say that it was not reasonable and sufficient.

" The judgment should be affirmed, with costs."

*E. A. Nash* for appellant.

*Marsenus II. Briggs* for respondent.

FINCH, J., reads for affirmance.
All concur.
Judgment affirmed.