## HAY, EXECUTOR, ETC., v. PETERSON.

MASTER AND SERVANT — ACTION FOR SERVICES RENDERED — PRESUMPTIONS — STATUTE OF LIMITATIONS — INSTRUCTIONS — EVIDENCE — BOOKS OF ACCOUNT — ADMISSIONS — DESTRUCTION OF EVIDENCE — MEMORANDA ON CALENDAR IN HANDWRITING OF DECEASED PERSON.

1. An agreement to pay for services rendered and accepted is presumed unless the parties are members of the same family or near relatives.

2. The burden of proving that the one rendering the services was to receive nothing therefor except his maintenance rests upon him who has accepted the services.

3. Where services were continuously rendered from November, 1878, until September, 1893 (with the exception of three months on account of sickness) payments of six dollars in each month during the years 1886 to 1888 inclusive, which under the evidence appear to have been partial and not complete payments, are held to have had the effect to make the account between the parties a mutual one, and to take the case out of the statute of limitations, and an instruction applying the statute to that part of the claim for services rendered prior to September, 1885, held to have been properly refused, in an action brought to recover the value of the services for the entire period.

4. An admission by one claiming a balance due for services rendered a decedent in his lifetime, that decedent owed him nothing, such admission being made to witnesses before the death of decedent and directly after the latter had asked him to make out his bill, if there was anything due, is strong evidence against him in an action brought upon such claim, but is not prima facie evidence of payment ; and an instruction that such admission was prima facie evidence of payment was properly refused.

5. The weight to be given to testimony of mere admissions is to be determined by the jury, and it may be proper for the court to instruct them that such testimony is usually unsatisfactory, and should be received with great caution.

6. The wilful suppression or destruction of evidence raises a presumption against the spoliator, where the evidence is relevant to the case, or where it was his duty to preserve it. Where the spoliator is the claimant, the fact of spoliation alone raises a presumption against his claim. Where a deed, a will, or other paper is proved to be destroyed, or suppressed, or there is vehement suspicion of its having been done, the presumption applies in favor of the party who claims under such papers, though the contents are not proved. But there is great danger that the maxim may be carried too far, and it should be cautiously applied.

7. The mere fact of the destruction of account books of a decedent by one who had lately been in his employ, and who made a claim for a balance due him for services rendered continuously for about fourteen years, is not, in an action brought

upon such claim against the executor of the decedent, sufficient to warrant the presumption that the contents of the books were against the interest of the plaintiff, it not appearing that the contents would have disclosed charges against or settlements with him, or that the books were relevant or material to the case.

8. An instruction was too broad and was properly refused which stated that if the account books of the deceased were destroyed by the plaintiff, a presumption arose that had the truth appeared by them it would have been against his interest ; as an instruction upon that point should have limited the presumption to an intentional destruction for the purpose of suppressing evidence, and have required the jury to first find that the books contained evidence against the plaintiff.

9. The fact that another account book of the decedent, covering a portion of the period in question, was afterwards found which disclosed payments made by the decedent to the plaintiff, does not warrant an absolute or controlling inference that the destroyed books contained like charges, or any charges against him.

10. Although a party may be entitled to an instruction upon a certain point, it is not the duty of the court to give a proper instruction unless requested in positive terms.

11. If an instruction is requested, and can not properly be given without modification, the court may, for that reason, refuse to give it.

12. To entitle an instruction to be given, it must be wholly correct in point of law.

13. Mere non-direction, partial or total, is not ground for a new trial, unless specific instructions, good in point of law, and appropriate to the evidence, are requested and refused.

14. A calendar found in the place of business of a decedent whose estate is sought to be charged with a balance claimed to be due a former employee for services rendered during several years, upon which, across certain dates respectively, in the handwriting of the deceased, appeared certain entries stating that said employee was "paid for a month" and was "paid to this day in full" was not admissible in evidence, and was properly excluded ; the entries not being in definite form to constitute a charge as to the amounts paid, and not being shown to have been kept in the usual course of business, or to have been transferred to books of account.

15.  Under the statute (R. S., 1887, Sec. 2590) making an account
book of original entries competent evidence in a case where
an executor is a party, as well as the rule which admits in
evidence entries made in the regular and usual course of busi-
ness after the death of the person who made them on proof
of his handwriting, it is necessary to show that the book
offered is an account book, or what may reasonably be consid-
ered as such, kept in the usual course of business.

[Decided August 1, 1896.   Commenced in District Court Novem-
    ber 11, 1893.]

ERROR to the District Court for Laramie County, HON.
RICHARD H. SCOTT, Judge.

Severin Peterson brought this action against Henry G.
Hay as executor of the last will and testament of Charles
G. Strom deceased to recover a sum of money alleged to
be due and unpaid for services rendered to the decedent
for a continuous period exceeding fourteen years, except
seven weeks in 1892 and five weeks in 1893, when he was
sick and cared for at the county hospital.   The issues
raised by the pleadings are stated in the opinion.

The defense claimed that there was no previous con-
tract between Peterson and Strom, and the services were
rendered by the former gratuitously in return for his main-
tenance by Strom.   Peterson did not testify, being incom-
petent under the statute, as the adverse party was the
executor of a deceased person.   The testimony in his
behalf, in the first instance, was to the effect that Strom
had explained to other persons who were produced as wit-
nesses, that he would pay Peterson well, as one witness
says, and, in the language of another, that "He told me
what he was paying him, what he promised to pay; it was
thirty dollars a month, and that he had n't paid him any,
only given him a quarter once in a while to get shaved,
and that he intended to settle up with him at some future
time; that he did not think Peterson was capable of
taking care of the money."   On cross-examination this
statement was somewhat modified so as to omit the idea

of a promise made to Peterson as a positive recollection of the witness. These statements of Strom to the witness were made, as testified, on several occasions, from 1886 to 1889.

The testimony on this point on behalf of the defense was that Peterson lived with Strom, ate and slept at his place, and that Strom furnished him his clothing, small amounts of money from time to time for personal necessities, and tended to show that Strom treated him as one of the family, although not always gently or kindly, at least, in the presence of others; that Peterson worked at Strom's place, doing anything required of him, and as a sort of personal servant.

At defendant's request the court gave the following instruction which was conceded to correctly state the law:

"The jury are instructed as matter of law that generally it is the law that if one person works for another at his request, a contract to pay what such services are reasonably worth is implied; but if the person performing such service lives in and is one of the family of the other for whom the services are performed, being provided with food, clothing, lodging, and care as one of the family, and doing labor and work for such other person, and as a matter of fact there is no contract between them relating to, or providing for, any compensation to be paid for such work and labor, then no action can be maintained therefor. In such a case as this, however, where the parties are not related to each other, a contract will be implied by law, unless the contrary is shown either express or to be implied from all the circumstances of the case. You are therefore instructed that if you shall find as a fact from all the evidence in the case there was not in fact any contract express or implied entered into between the plaintiff and the deceased C. G. Strom, relating to the payment for the work and labor performed for the deceased by the plaintiff; and if you shall further find that the plaintiff during the time included in his claim,

lived in and was one of the family of the deceased C. G. Strom, being provided with food, clothing, lodging, and care as one of the family, then the plaintiff can not recover, and your verdict should be for the defendant."

It was claimed by counsel for the plaintiff in error, (defendant below) that this instruction was disregarded by the jury. The jury were also instructed that if they believed the plaintiff entitled to recover, the amount should be limited to the reasonable value of his services over and above the value of his board and lodging, and such clothing and care as were furnished him by the deceased, and over and above all payments made to plaintiff by the deceased.

On the first trial a verdict was returned for the plaintiff, but a new trial was granted by reason of the discovery of new evidence; viz., a certain account book of the deceased, showing payments to the plaintiff during the years 1886, 1887, and 1888, and a calendar containing certain entries in the handwriting of the deceased.

A new trial resulted in a verdict for plaintiff, and after the filing of a remittitur for a portion of the amount, judgment was rendered on the verdict and the defendant prosecuted error. The remaining facts and instructions so far as material to the points decided are stated in the opinion.

*Burke & Fowler*, for plaintiff in error.

The court below adopted the correct doctrine respecting the right of one performing work for another while a member of his family to recover compensation therefor. (Wyley v. Bull, 41 Kan., 206; Windland v. Deeds, 44 Ia., 98; Smith v. Johnson, 45 Ia., 308; Ryan v. Lynch, 9 Mo. App., 18; Mountain v. Fisher, 22 Wis., 93; Cooper v. Cooper, 17 N. E., 892; 26 Cent. L. Jour., 51–53; 2 Pars. Cont., 47; Ellis v. Carey, 42 N. W., 253; Shayne v. Smith, 37 Kan., 55; Knight v. Knight, 33 N. E., 460.)

The action, as to all of the claim for work done prior

to eight years preceding the death of Strom, was barred
by the statute of limitations.   (R. S., 1887, Sec. 2370,
L. 1891, p. 319; Courson's Ex'rs v. Courson, 19 O. St.,
454; Dempsey v. Mc Nally, 73 Md., 438; Estes v. H. B.
Shoe Co., 54 Mo. App., 543; Schoch v. Garrett, 69 Pa.
St., 144; Davis v. Gorton, 16 N. Y., 255; Grady v. Wil-
son, 115 N. C., 344.)   The claim sued on is not a mu-
tual account, and it is only when such is the case, or an
express contract is proven, that a recovery can be had for
items ante-dating the time limit named in the statute.
(Fitzpatrick v. Henry, 58 Wis., 250; Angell on Lim.,,
148, 149; Wood on Lim., 278; Crumb v. Hegold, 32 Ill.
App., 282; Dunn v. Howard, 73 Wis., 545; Sullivan v.
Lattner, 38 S. C., 158; Mim's Ex'rs v. Sturtevant, 18.
Ala., 360; Wood, 141; Catton v. Tolley, 22 Kan., 472;
Seibert v. Baxter, 36 Kan., 189; Williams v. Griffiths, 2
C. M. and R., 45.)   Admissions of payment, or that
there is nothing due, like a receipt, are prima facie evi-
dence of payment.   (1 Greenleaf Ev., Secs. 169–204;
id., Sec. 300; Robinson v. Dugan, 35 Pac., 902; 1 Rice's
Ev., 468; Gibney v. Merchay, 34 N. Y., 301; Causer v.
Paul, 41 N. H., 24; Saveland v. Greene, 40 Wis., 431;
1 Best on Ev., 406.)   The books of account of the de-
ceased having been destroyed by plaintiff, a presumption
arose that had the truth appeared by them it would have
been against his interest.   (1 Greenleaf Ev., 37; 3 id.,
34, 408, 453; Hauser v. Austin, 10 Pac., 37; 1 Phil.
Ev., 639 star page; The Sam Sloan, 65 Fed., 125; State
v. Neals, 42 Kan., 54, 120; State v. Fulton, id., 164; 1
Rice's Ev., 56; 19 Ency. L., 71, n., 2.)

The payment of wages during three years, 1886–1888,
establishes the presumption that all previous wages had
been paid.   (2 Best on Ev., 406; Rice Ev., 56.)   It is a
presumption of law in cases of running accounts for in-
terest, taxes and rent, and the like, that there has been
payment, after the lapse of a reasonable period, as from
their nature common prudence and foresight would pro-
vide for them.   (1 Rice Ev., 70; Decker v. Livingston,

15 Johns, 479; Crompton v. Pratt, 105 Mass., 255; Hogdon v. Wright, 36 Me., 326; Brewer v. Knapp, 1 Pick., 332; Attleboro v. Middleboro, 10 id., 378; Robinson v. Townsend, 20 id., 345.) The calendar with its entries of payments to the plaintiff in the handwriting of the deceased was admissible. (2 Rice Ev., 329; 1 Greenleaf Ev., 118; Kendall v. Field, 14 Me., 30; Hooper v. Taylor, 39 id., 229; Augusta v. Windsor, 19 id., 317; Nichols v. Webb, 8 Wheat., 326; Beaver v. Taylor, 1 Wall., 469; Welsh v. Barrett, 15 Mass., 381; Pratt v. White, 132 id., 478; Rice v. Hodge, 26 Kan., 164; Smith v. Law, 47 Conn., 413; Ingram v. Bockins, 9 S. & R., 285; Smith v. Sandford, 12 Pick., 138; Hill v. Scott, 12 Pa. St., 168; Hoover v. Geer, 62 id., 138; Gale v. Morris, 2 Mc Lean, 472.)

*Ralph E. Esteb*, for defendant in error.

No part of the claim of plaintiff was barred by the statute of limitations. (Jackson v. Mull, 42 Pac., 603; Smith v. Velie, 60 N. Y., 106; Gilbert v. Comstock, 93 id., 484; Denise v. Denise, 110 id., 562; Pursell v. Fry, 58 How. Pr., 319.) Accounts for services where payments are made from time to time on account are deemed mutual and open accounts. (Wood on Lim., 278; Angell on Lim., 141; Carter v. Carter, 36 Mich., 207; Payne v. Walker, 26 id., 59; Kimball v. Kimball, 16 id., 211; Robie v. Briggs, 59 Vt., 443; 31 Mo. App., 180.) Where payments are made the law does not presume past services paid for in full. (Wood on Lim., 110; Crompton v. Pratt, 105 Mass., 255; Pursell v. Fry, supra, Smith v. Velie, Denise v. Denise, Gilbert v. Comstock, supra; In re Gardner, 103 N. Y., 233.) The services were continuous, and the cause of action did not accrue until the services were ended. (Taggart v. Tevanny, 27 N. E., 511; Story v. Story, id., 573; Littler v. Smiley, 9 Ind., 116; Carter v. Carter, 36 Mich., 207.) The weight to be given to evidence of mere admissions is to be determined by the jury. (Saveland v. Green, 40 Wis.,

444.) There must have existed a fraudulent design in the destruction of books of account of deceased to have made plaintiff subject to the presumption that their contents would be against his interest. (1 Phil. on Ev., 639; Blade v. Nolend, 12 Wend., 174.) The calendar was not admissible. It was not a book of accounts. (Law v. Payne, 4 N. Y., 248; Oberg v. Breene, 50 N. J. L., 145; Libby v. Brown, 78 Me., 492; Case v. Potter, 8 Johns., 443.)

GROESBECK, CHIEF JUSTICE.

This is an action against Henry G. Hay, the plaintiff in error, as executor of the last will and testament of Charles G. Strom, deceased, to recover for services rendered by Severin Peterson, the defendant in error, to decedent during his lifetime, in the sum of $7,186.67 for 14 years, 10 months, and 20 days, at the rate of forty dollars per month, the period of time being from November 1, 1878, to September 21, 1893, at which last-named date the employer died. The claim was presented to the executor and disallowed. The petition declares upon a quantum meruit and alleges that the reasonable value of the services was forty dollars per month, and "that plaintiff has received no compensation for his labor during said period." The amended answer upon which the trial was had, for a first defense, denied each allegation of the petition, except the death of Strom, the employer, the probate of his will, the appointment and qualification of the executor, the presentation of the claim, its disallowance, and the filing of the claim with the clerk of the district court of the proper county, and that the plaintiff worked for said Strom during most of the period alleged in the petition, except when he was sick and unable to work. The second defense, in brief, sets forth that the plaintiff below made his home with Strom, and was a member of his family, and was during all of the period mentioned in the petition, provided with food, clothing, lodging, medical attendance and care, and that any labor

performed by Peterson for Strom was rendered as a member of Strom's family, without any contract between the parties, or any promise on the part of Strom to pay for the same; that Strom took Peterson into his home as a matter of friendship, and by reason of his charitable and friendly feeling toward him, cared for and maintained him as one of his family, furnishing all the necessaries of life and supplies for his subsistence, as well as various sums of money from time to time for his personal needs and expenses, including among other sums of money, not less than six dollars per month, monthly, during the years 1886, 1887, and 1888.

The third defense alleges that the said sum of six dollars per month during the years aforesaid received by Peterson was all that his services were worth over and above his board, lodging, and medical attendance and care, and that he was paid in full whatever was due him up to December 31, 1892, and that all of the claim of the plaintiff prior to September 20, 1885, accrued more than eight years prior to the commencement of the suit, and was barred by the statute of limitations.

The fourth defense sets forth, in a different form, the bar of the statute of limitations, showing that on the 10th day of January, 1891, all of the claim of the plaintiff for work prior to January 10, 1887, had accrued more than four years, and was then barred by the statute of limitations, as it existed on January 10, 1891, the date of the approval of Chapter 72, Sess. Laws 1890–91, which extended the time for bringing actions upon contracts not in writing, either express or implied, from four years, the limitation theretofore fixed by Section 2370 of the Revised Statutes of Wyoming, to eight years. The sixth defense alleged payment in full, and the seventh defense was a counter claim for board, lodging, medical attendance, subsistence, and care furnished to Peterson by Strom, alleged to be reasonably worth the sum sued for. It is conceded that a reply was filed to the affirmative defenses of the answer.

The trial resulted in a verdict for the plaintiff below, in the sum of $3,297.33, and upon a motion for a new trial, the court found the verdict excessive, and directed that the motion should be granted, unless the plaintiff Peterson filed a remittitur in the sum of $878.33, reducing the verdict to the sum of $2,419. This remittitur was filed, the motion for a new trial was overruled, and judgment was entered for the amount of the verdict as reduced. The deductions made from the verdict were for three months' services while plaintiff below was sick and in the hospital, and by a payment of $6 per month for the years 1886–1888 inclusive, amounting in the aggregate to $261, the further reduction allowed by the court, being the difference between the rate of wages per month allowed by the jury, and the rate of $15 per month allowed by the court, exclusive of board, lodging, and clothing. There are 22 assignments of error in the action of the trial court; in rejecting certain evidence offered by the plaintiff in error, the refusal of certain instructions requested by him, and the giving of certain instructions requested by the adverse party. The verdict is also assailed as not based upon sufficient evidence, and as contrary to law. Peterson, the plaintiff below, did not testify as to the contract or term of service, probably because his adversary was the executor of the will of decedent, and no objection is made on that score under the rule laid down by our statute excluding a party from testifying in such matters, where his adversary is an executor. The testimony to support the claim of the plaintiff below was that of admissions made by decedent during his lifetime that he had promised to pay Peterson when he was "through with him," one of the witnesses stating that the amount was $40, and another $30 per month. There was other testimony to the effect that the decedent had said that he had not paid Peterson anything, as the latter was unable to take care of his money, and that decedent had shown to a witness a package which he had put in his safe, and stated that it was Peter-

son's wages. The services of Peterson were of long, daily-
duration, and consisted of his attendance at the liquor-
saloon of his employer, where he had waited upon cus--
tomers, and performed menial labors in cleaning out the
saloon. Besides these services he had performed per-
sonal services in waiting upon his employer. The evi--
dence very clearly establishes that Peterson did not
render his services as a member of Strom's family, nor-
in return for board, lodging, and medical care when sick.
A portion of the time, about three months, he was sick at
the hospital, and was a county charge. The instructions-
for the defense that the services were rendered as a mem-
ber of the family of Strom seem to fairly present the law,
and the burden of proving that there was an understand-
ing that Peterson was to receive nothing for his services-
except his maintenance was very properly put upon the-
defendant below. An agreement to pay for services ren-
dered and accepted is presumed, unless the parties are
members of the same family or near relatives. Lawson
on Presumptive Ev., 74. The parties were not relatives,
and the evidence establishes the fact that Peterson was
not considered a member of Strom's family, but that he
was to be paid for his services, the amount of which was
not clearly fixed. It is unnecessary to review the instruc-
tions complained of on this point, as they fairly present
the law governing this branch of the case.

Other assignments of error attack the verdict as excess--
ive. As modified and reduced by the court, the allow-
ance of fifteen dollars per month is not excessive, if
plaintiff should have recovered, and the verdict should
not be disturbed on that ground.

The statute of limitations is pleaded in bar, and as
presented by the following instruction requested by the
plaintiff in error, and refused by the court: "The jury
are instructed as a matter of law, that the plaintiff can
not recover for any services or work performed by him
for the deceased in his lifetime prior to eight years pre--
ceding his death."

The other defense of the old statute of limitations in force during a period covered by the employment is not urged upon our attention, and we shall not consider it. The action could only be brought within eight years after the cause of action accrued. It is asserted that the right of action accrues, and the statute begins to run on each item of the account from the day of its proper date; that is, from the day of the delivery of the article or work done, as was held in Courson's Executors v. Courson, 19 O. S., 454; but in that case, there was an interrupted term of service, and the breaks in such term served to make such continuous period of service, separate and distinct items of account. In this case the service was continuous, except for a brief period of three months, while defendant in error was sick and in the county hospital, and the service was resumed after his recovery.

But it is insisted that where there is an express employment, but no time or measure of compensation or term of employment agreed upon, that the law will regard the hiring as from year to year, and the wages payable at the same time, and will not imply an agreement that the payment of compensation shall be postponed until the termination of the employment. To this effect are the cases of Davis v. Gorton, 16 N. Y., 255; Matter of Gardner, 103 N. Y., 533; Gilbert v. Comstock, 93 N. Y., 484; Miller v. Nash, 85 N. C., 51; Grady v. Wilson, 115 N. C., 344; 1 Wood on Limitations, 330.

There are other cases to the contrary, notably Littler v. Smiley, 9 Ind., 116, and we are not prepared to adopt the rule of the New York cases, as we think that the contrary rule is upheld by this court in Jackson v. Mull, 42 Pac., 603, where the circumstances of the case were somewhat similar to the case at bar. However, the payments made in the years 1886 to 1888, took the case out of the statute, and made the account between the parties a mutual one. It is urged that the regularity of payments of six dollars monthly during these years leads to the inference that these payments were in full for those years, and had no·

reference to past transactions, but there is testimony that during these periods and afterward, the decedent had stated that he had not paid Peterson anything, and that his wages were thirty dollars per month. There certainly was evidence to the effect that these payments were part and not complete payments, and it can reasonably be inferred from the evidence that they were on account. In New York, such payments have been held sufficient to take the case out of the statute, and such holding is not contrary to the views announced in the cases from that State already cited. Smith v. Velie, 60 N. Y., 105; Matter of Gardner, 103 N. Y., 233. The ruling of the court refusing to give the instruction and apply the statute of limitations to that portion of the claim prior to September 23, 1885, was warranted under the evidence.

The court was asked to instruct the jury that the declarations of a creditor, as in the case of plaintiff below, that any debt of the deceased to him is discharged, or that there is nothing due him, is prima facie evidence of payment. Peterson admitted to witnesses that Strom owed him nothing, directly after the latter in his last sickness asked him if there was anything due to make out his bill, to which interrogatory of Strom, Peterson did not respond. This evidence did not particularly relate to an admission of payment, but might tend to show that there was no original contract to pay for services rendered by Peterson. It was strong evidence against Peterson, but the court and jury seem to have treated it of small moment taken in connection with the other evidence in the cause, and we think that their action in this respect, although the admission was not denied by Peterson, is not error, because the weight to be given to testimony of mere admissions is to be determined by the jury, and it may be proper for the court to instruct them that such testimony is usually unsatisfactory and should be received with great caution. (Saveland v. Green, 40 Wis., 431, 444.)

The instruction was too sweeping in its terms, and the ground was fully covered by another instruction which was

given at the request of the defendant below, in substance, that if the plaintiff knew before the death of Strom that the latter desired and requested all his creditors, including Peterson, to present their claims before his death, and if plaintiff refused to do so, and said that nothing was due him, that fact raised a strong presumption against him.

Some of the books of account of the decedent were destroyed by the plaintiff Peterson, and the only books found were those discovered concealed under a barrel, and a calendar found hanging on the wall. Upon the latter, entries were made showing that at the close of January of that year, Peterson was paid for one month, and at the close of the year, was paid in full, and these entries were in the handwriting of decedent. Judge Potter, who drew up the will, after the death of the testator left Peterson in charge of the place of business of the decedent, where there were a number of account books. He afterward examined them carefully, but was not allowed to state whether there were any charges therein against any employee of the decedent Strom. At the time he was questioned upon this matter, it had not been shown that the books or any of them had been destroyed, and it seems that the question was properly objected to. No exception was taken to the ruling of the court sustaining this objection, and the question, although a vital one in the case, was not renewed. Judge Potter examined three or four of the books, he says, very carefully, so that he had a general idea of them, without examining any particular account. The books might have been intact when the inventory and appraisement were taken, which took a day or two, and the witness stated that he was under the impression that he examined the books at that time, but may have examined them before the inventory was taken. He had charged Peterson to leave everything as it was, and when he discovered that the books were burned, spoke sharply to Peterson, reminding him of the direction, and asked him why the books had been destroyed. Peterson replied that Strom, the deceased, had told him to burn

them up. This answer was made promptly, and Judge Potter says there was nothing extraordinary in Peterson's conduct when he made this explanation. The instruction asked for on this point was as follows: "If the jury believe from all the evidence in this case that the books of account of the deceased, or any of them, were destroyed by plaintiff, a presumption arises that had the truth appeared by said books, it would have been against his interest." This instruction was refused, and the court gave no other bearing upon the question.

The defendant was entitled to an instruction covering the point, for it is an universal rule that the suppression or destruction of evidence raises the presumption against the spoliator, where the evidence is relevant to the case, or where it was his duty to preserve—*omnia præsumuntur contra spoliatorem* Lawson on Presumptive Ev. 140 et. seq. Where the spoliator is the claimant, the fact of spoliation alone raises a presumption against his claim. Where a deed, a will, or other paper is proved to be destroyed, or suppressed, or there is vehement suspicion of its having been done, the presumption, *in odium spoliatoris*, applies in favor of the party who claims under such paper, though the contents are not proved. Lawson Pres. Ev. 152, and cases cited. But there is great danger that the maxim may be carried too far, and it should be cautiously applied. In this case, the mere destruction of the books is not sufficient to warrant the presumption that their contents were against the interest of Peterson, for they were burned after they had been examined, and some time after the funeral of Strom. There was no attempt made to conceal the books by Peterson, or to prevent their examination, and it nowhere appears that there were charges against Peterson on the books destroyed, although it does appear that the books discovered did contain charges against him. Whether Judge Potter's examination was sufficient or not to show that there were such charges, does not appear, neither does it appear that he did not know or could not remem-

ber whether there were any charges in the books against the plaintiff. However, the instruction asked was too broad and should have been modified by counsel, for the mere fact of the destruction of the books alone, does not show that they were evidence against the interest of the spoliator. His conduct might not have been that of a spoliator, but rather that of a stupid or ignorant man, who thought that he had a duty to perform, enjoined upon him by his deceased employer, and there are some indications in the evidence that support this view. Some four months prior to his death, Strom published a notice in a local daily paper, which the publisher states he believes was brought to him by Peterson, a notice entitled: "Extends Thanks," which states that on the 7th of the month (May, 1893), Strom closed his liquor house, and that he would store his goods, and if business would justify would probably open the next summer, and if not, he would ship his goods away. He then presents his highest compliments to his "proper" customers, and states: "Remember if I am guilty to creditors for payment come and collect. If any persons are guilty to me for liquors, please keep this (the notice) as a present." This notice was introduced for the purpose of showing that Strom was settling up his accounts, and that in addition to his general custom of meeting his obligations promptly, he had given notice to his creditors that he desired to pay his bills. Other testimony was introduced showing that he had directed the payment of his local bills, and had requested that money be taken from his safe for that purpose. But the publication referred to also indicates that he had no desire to press his claims against his creditors, and is in harmony with Peterson's statement that Strom had directed him to burn his books.

No instruction was asked upon the question of this explanation of Peterson, nor were the jury asked to be instructed to disregard it as evidence. It went to them as his explanation of his conduct in destroying the books. It will be noticed that it appears that an inventory was

taken of the property of the estate, but whether before or after the destruction of the books does not appear. It should have been shown that the accounts against the creditors of the estate were not in this inventory, or were not preserved. If they were, and had Peterson's account, if there was any against him, appeared in such inventory, it could have been introduced as secondary evidence.

The instruction asked for presents the British law governing the spoliation of documents. Broom's Legal Maxims, 940; 1 Phillips on Evidence, Cowen, Hills and Edwards Notes, 639; Houser v. Austin, 2 Idaho, 188, 198, 10 Pac., 37. The rule is strong in admiralty cases, but upon this point, Mr. Justice Story says in the case of The Pizarro, 2 Wheaton, 241: "The objection which is urged against the admission of the further proof, would, under other circumstances, deserve great consideration. Concealment, or even spoliation of papers, is not of itself a sufficient ground for condemnation in a prize court. It is undoubtedly a very awakening circumstance, calculated to excite the vigilance, and justify the suspicions, of the court. But it is a circumstance open to explanation, for it may have arisen from accident, necessity, or superior force; and if the party in the first instance fairly and frankly explains it to the satisfaction of the court, it deprives him of no right to which he is otherwise entitled. If, on the other hand, the spoliation be unexplained, or the explanation appear weak and futile, if the cause labor under heavy suspicions, or there be a vehement presumption of bad faith, or gross prevarication, it is made the ground of a denial of further proof, and condemnation ensues from defects in the evidence, which the party is not permitted to supply."

In the case of Baldwin v. Threkeld, 8 Ind. App., 312, the court say : " The court sustained an objection of the appellee to proving the contents of certain letters testified to by the appellant after he had practically admitted that he voluntarily destroyed the letters after he had commenced the suit on a note against the Bryants. The

court had a right to deduce from the act of destruction after the commencement of such suit, the inference of a fraudulent design to do away with the letters themselves, and upon this theory the exclusion of the evidence was proper." This is the rule laid down in Blade v. Noland, 12 Wendell, 173, where a party deliberately destroyed a note before it fell due, and there was nothing in the case accounting for or explaining the act, consistent with an honest or justifiable purpose; and it was held that the plaintiff was bound to give, affirmatively, evidence to show that the act took place under circumstances that repelled the inference of fraudulent design. These cases apply to a case where a party destroys or suppresses his own evidence, and seeks to introduce secondary evidence of the contents of the same if in its nature documentary, or does not produce the witnesses to testify, or causes them to leave the jurisdiction. But the presumption is not a conclusive or absolute one, although it is a strong presumption; and this is the rule where a party suppresses or withholds evidence. The following instruction was given in the case of Thompson v. Thompson, 9 Indiana, 323, 68 Am. Dec., 646 : "If the jury believe from the evidence that William Thompson, the plaintiff, burned, or in any way destroyed, any of the papers of the deceased, James A Thompson, without the knowledge or consent of those who were interested in the estate of said deceased, it devolves on him to show by proof other than his own statements, what those papers contained; and on his failure to do so, the law raises the presumption against him that they were of the highest value to the defendant in this suit, and entitles her to a verdict." The court said, in substance, while holding the instruction erroneous, that it is undoubtedly true that a party who destroys the evidence by which his claim or title may be impeached raises a strong presumption against the validity of his claim, and if the plaintiff destroyed papers of the estate, and especially receipts for taxes, which are important documents, he committed a great wrong, but yet the pre-

sumption against him would not be of that conclusive character indicated by the instruction. The jury were told in the instruction in the case cited, that if the plaintiff destroyed any papers of the deceased, the defendant was entitled to their verdict. The court then proceeds to say : "The law of nations, as recognized in continental Europe, under certain circumstances raises a conclusive presumption against the spoliator of papers indicating the national character of a vessel; 1 Kent's Com., 157, 158; but even that rule does not ordinarily prevail in England and the United States; 1 Greenl. Ev., Sec. 31; The Pizarro, 2 Wheat., 242, note e. This rule has no place in the courts of the common law. On proof of the existence of a paper, the testimony of a party who ought to have the custody of it touching its loss, with evidence of diligent search for it, is addressed to the court. If its loss be established, he is allowed to go to the jury with evidence of its contents. But his adversary may prove that he has withheld or destroyed it, and if he satisfactorily establish that point, every presumption will be indulged against him in reference to its character. 2 Phill. Ev. Cowen and Hills notes, 293; 3 id., 1193; Life and Fire Ins. Co. v. Mechanic Fire Ins. Co., 7 Wend., 31. The rule is well stated by Sutherland, J., in the case last referred to."

This rule is that the refusal to produce books and papers upon notice given, does not warrant the presumption that they would show the facts alleged by the party giving notice; the only effect of such refusal being that parol evidence of their contents may be given; and if such secondary evidence be imperfect, vague and uncertain as to dates, sums, etc., every intendment and presumption shall be against the party who might remove all doubt by producing the higher evidence. But some general evidence of such parts of their contents as are applicable to the case must first be given, before any foundation is laid for any inference or intendment on account of their non-production. This doctrine will be applied to another feature of the case at bar.

The following instruction was given in the case of Bott v. Wood, 56 Miss., 136, 138 : "If the jury are satisfied from the evidence that Thomas H. Wood fraudulently destroyed the will now in controversy, testified to by Blanton as duly executed by his father, everything may be presumed against the destroyer of the will, *in odium spoliatoris* (meaning in hatred of the spoliator), and against those claiming under him."

This instruction was held erroneous, the court remarking that the maxim, *Omnia præsumuntur in odium spoliatoris*, might·be carried too far, and cited Best on Evidence, Sec. 412, et seq., as stating that it should be regarded as merely matter of inference, in weighing the evidence in its own nature applicable to the subject in dispute. The party destroying a written instrument must not gain by his own wrong, but it is only in reference to the contents of the paper destroyed or withheld that the maxim can have application. As the contents of the will were proven, the maxim had no application, and it was not a proper guide for the jury; it was held that the instruction was too broad and indefinite in saying that "everything may be presumed against the destroyer of the will," as it should have been limited to intendment and presumption as to the terms of the will, if given at all.

The instruction given in the case at bar was to the effect that if the plaintiff destroyed the books of account of the deceased or any of them, the presumption arose that had the truth appeared by said books it would have been against his interest. This excludes wholly the circumstances surrounding the destruction of the books, and the explanation of the plaintiff. It also assumes that the books of account contained charges against the plaintiff. It is the destruction of "evidence" relevant to the case, or where it was the duty of the plaintiff to preserve the evidence, that the rule applies. Lawson Pres. Ev., Rule 24, p. 140. It does not appear that the books destroyed were relevant or material to the case, or that their contents would have disclosed charges against or settlements

with the plaintiff, Peterson. Another book found disclosed payments made to the plaintiff, but this does not warrant an absolute or controlling inference that the burned books contained like charges or any charges against Peterson. (Drosten v. Mueller, 103 Mo., 624, 633.) But the destruction of the books must be a wilful act, as the presumption is that evidence "wilfully" suppressed would be adverse if produced. 1 Rice. Ev., Sec 37, sub. c. While the word "wilful" might in common parlance be held to be synonymous with "intentional," yet there can be no doubt that the destruction must be designedly done with the purpose of suppressing evidence.

Taking into consideration all the facts and circumstances relative to the burning of the books by Peterson, including the opportunity afforded for the examination of them for days after the decease of his employer, and that there was not probably a very diligent search by him of all the books of account, as one was found with but little effort, and a calendar was left hanging on the wall containing some statements against his interest, his apparent candor and promptness in acknowledging the burning of the books, the explanation that he gave that it was done at the direction of his employer, and his evidently regarding his unusual act as nothing extraordinary, does not fully convey the belief that the destruction of the books by him was designedly done for the purpose of suppressing evidence against him. Certainly, the presumption resulting from the destruction of the books was not an absolute or conclusive one, and the instruction was too sweeping in its terms, as it neither by qualifying words limited the presumption to intention or design, nor to the fact that the jury should first find that the books contained evidence against him. Although entitled to an instruction upon this point, it was not the duty of the court to give a proper instruction, unless requested in positive terms. If an instruction is requested and can not properly be given without modification, the judge may for

that reason refuse to give it, because to entitle it to be given, it must be wholly correct in point of law.   Mere non-direction, partial or total, is not ground for a new trial, unless specific instructions, good in point of law and appropriate to the evidence, are requested and refused. 2 Thompson on Trials, Secs. 2341, 2349.

The trial court refused to admit in evidence a certain calendar found in the place of business of Strom, upon which was written in Strom's handwriting certain statements.   It was marked for identification, and upon the refusal of the court to receive it as evidence, the counsel for defendant below offered to prove by it that in the handwriting of Strom, the deceased, across the date of January 30, 1892, appeared the words, "Severin paid for a month," and across the 31st day of December, 1892, also in the handwriting of the decedent, appeared the words, "Severin Peterson paid to this day in full."   This calendar was found hanging on the wall, and one account book was found under a barrel by a son of decedent, in a room where the safe was kept.   The witness was not produced, nor his deposition taken, as he was in Sweden, but the fact of the discovery of these papers and books was shown by the affidavit of the executor, which was admitted in evidence in order to prevent a continuance.   This affidavit states that other memoranda in Strom's handwriting appeared upon the calendar, but no reference is made to such matters other than the two entries mentioned in the offer of counsel when the calendar was sought to be introduced.   Nowhere in the record is it disclosed what these other entries were, and the contents of the calendar are not before us in any form, except as to them.   It is asserted that it was shown that it was the custom of the decedent to make memoranda upon the calendars, but this is not borne out by the testimony.   The calendar was not a book of original entry, neither does it appear to have been kept in the usual course of business of the decedent.   It can not be said that it was one of the books of account of the deceased.   The statute appli-

cable to such evidence among other things provides that
a party shall not testify where the adverse party is an exe-
cutor or administrator, with certain exceptions, one of
which is as follows: "Sixth. If the claim or defense
is founded on a book account, a party may testify that the
book is his account book, that it is a book of original en-
tries, that the entries were made by himself, a person
since deceased, or a disinterested person non-resident
of the county; whereupon the book shall be competent
evidence; and such book may be admitted in evidence
in any case, without regard to the parties, upon
like proof by any competent witness." Rev. Stat., Sec.
2590. Unfettered by statutory provisions, the American
cases taken together are to the effect that entries made in
the regular and usual course of business are admissible in
evidence after the death of the person who made them,
on proof of his handwriting; and during his life if authen-
ticated by himself. Other private entries may be used to
refresh the memory, but are not admissible in evidence.
Notes to Price v. Earl of Torrington, 1 Salk, 285; Doe
v. Turford, 3 B. & Ad., 890; 1 Smith's Leading Cases,
581.

The statute does not seem to change this rule, and it is
necessary to show that the book offered is an account
book, or what may reasonably be considered to be such.
The most liberal rule was adopted by the Supreme Court
of Vermont in Gleason v. Field, 65 Vt., 560, where the
diary of a decedent for a certain year was held rightly
admissible in evidence against an administrator. But the
entry was in the form of an original entry of a charge in
a book account, rather than a memorandum from which
such charge could be formulated. There were regular
books of account kept in that case, but the entry was
found under the proper dates in a diary. The court said:
" When the transaction requires and furnishes only a
memorandum, its entry on a day-book, journal, or ledger,
intermingled with proper accounts, does not render it any
more admissible in evidence. But when it is of such a

nature that it is the proper subject of a charge upon book, and the party enters it as such charge, although on a book other than his regular books of account, such entry is an original entry in book account.   Nor is its character changed by his failure to transfer it upon his regular books of account.''   It was also remarked that the nature of the transaction and entry marks the determinative characteristic between a charge in book account and memorandum, and that this is the doctrine in all the cases in Vermont.   There is a marked difference between the charges made in that case on the diary of the decedent and upon the calendar in the case at bar.   There the entry was made in each instance :   '' Liberty T. Kinney, Dr. To paid . . . for you,'' while on the calendar offered in this case the entry was '' Severin paid for a month,'' and '' Severin Peterson paid to this day in full.''   These entries do not disclose the amount paid in either case, and the memorandum on the calendar, although a proper subject for book charge, was not entered '' as such charge,'' an omission that appears to be studied.   But this Vermont case does not appear to be in harmony with other cases in that State or with cases elsewhere.   Said the court in Barber v. Bennett, 58 Vt., 476, 483 :   '' But it has generally been held that to lay the foundation for that kind of evidence, it must be shown that the entries (of a deceased person) were made in the usual course of business of the party making them, and at or about the time of the transaction to which they refer.   This qualified right to use such evidence in favor of the party making the entries is in contravention of one of the primary rules of evidence which forbids the manufacture of evidence by a party in his favor.''   The rule announced in Welsh v. Barrett, 15 Mass., 380, is commended, and that is ''that what a man has actually done and committed to writing when under obligation to do the act, it being in the course of business he has undertaken, and he being dead, there seems to be no danger in submitting to the consideration of the jury.''

The Vermont court would not apply the rule in the case last cited from that State, as the memoranda was made by the decedent in his lifetime upon loose pieces of paper, and said further: "A memorandum is defined to be a note to help the memory; and this paper considered in connection with the circumstances under which it was found, partakes of that character. It certainly was not an account so kept and proved as to be admissible as evidence. It has been uniformly held in this State that memoranda are not independent evidence, even during the lifetime of the party making them." In the case of Callaway v. McMillian, 11 Heiskell (Tenn.), 557, the evidence consisted of entries in a memorandum book carried by decedent in his lifetime, which was found by his executors after his death, and the entries therein were proven to be in the testator's handwriting; and it was also proven by the executors that they had no other means of proving these items. They were clearly stated in amounts and dates, but were rejected by the court which held that the entries were not admissible either under the statute or the general common law principle, as the book was not a book of account, nor were the entries made in the usual course of business or professional employment, but the book was but a mere private memorandum, and upon no principle admissible.

So it was held in the case of Robinson v. Hoyt, 39 Mich., 405, that where payments alleged to have been made by a deceased mortgage debtor were denied by the creditor, they were not sufficiently proven by entries in the handwriting of the debtor in an unusual place in his day-book from which the immediately preceding leaves have been torn, while the regular entries were followed by a number of blank pages.

The following cases tend to support these views: Vinal v. Gilman, 21 W. Va., 309; Peck v. Valentine, 94 N. Y., 569; Mayor v. R. R. Co., 102 N. Y., 581; Bates v. Preble, 151 U. S., 149, 157; Anchor Milling Co. v. Walsh, 108 Mo., 277; Robinson v. Smith, 111 Mo., 205;

Buckley v. Buckley, 12 Nev., 423, 442; Libby v. Brown, 78 Me., 492; McDonald v. Carnes, 90 Ala., 147; Doolittle v. Stone, 136 N. Y., 613; Abel v. Fitch, 20 Conn., 96; Bridgewater v. Roxbury, 54 Conn., 217; House v. Beak, 141 Ill., 290.

In one State, at least, such memoranda of a decedent as disclosed by these calendars offered in evidence at the trial below, is by statute made competent evidence (Craft's Appeal, 42 Conn., 153); but we have no such statute, and the rule ought not to be relaxed without it, even under the circumstances disclosed in this case. Another objection to the entries on this calendar is that they were not shown to be continuous, as the entries must be in a book used continuously for the purpose; 1 Wharton on Evidence, Sec. 683, citing Kibbe v. Bancroft, 77 Ill., 18; for, although the affidavit admitted as evidence states that there were other entries besides the two relevant to the case, the offer does not show this fact, and we have no means of determining what those entries were, as there is no proof of the nature and character of the other entries on the calendar, whether of daily entry or of less frequent periods. While our statute ought to be liberally construed, and the liberal rule followed under the common law, to admit a memorial of business transactions which can not ordinarily be carried in the mind, yet recognizing the wide application given to books of account under statutes akin to ours, it will not do to admit matters that have not been the subject of book accounts, nor registered in the usual, regular, and ordinary course of business. The account books of the illiterate ought to be as admissible as the books of a tradesman and a banker, if within the statutory conditions, as the purpose of the law is to secure authenticity and credibility in respect to the evidence, rather than to prescribe forms. Woolsey v. Bohn, 41 Minn., 238.

There are respectable courts that hold that a debtor's books of account are not evidence to prove payments by him to his creditors (Hess' Appeal, 112 Penn. St., 168),

yet the liberal tendency of modern decisions is in the other direction. These payments, however, ought to be charged on something that might be considered a book of account kept in the usual course of business.

The proof lacks this crucial test in regard to the calendar, and the calendars were not admissible as primary evidence. They are under the ban as secondary evidence, as there is nothing to show that the entries were ever made in the books of account, or that it is impossible for the executor to show that fact. Even if the destruction of the books by Peterson prevented the executor from giving secondary evidence of their contents, and although slight evidence under such circumstances may be admitted and will be deemed satisfactory, there is nothing to show that any entry on the calendar was ever the subject at any time of book account. Because the entries were not in definite form to constitute a charge as to the amounts paid, and were not shown to have been kept in the usual course of business, or to have been transferred to books of account, the calendar was properly rejected by the trial court.

This cause was twice tried, the second trial resulting in a much larger verdict for the plaintiff than was first awarded to him. While there is undoubtedly a sufficient reason for instituting the proceedings in error, and our impressions are that were we to decide the cause in the first instance, we might have reached a different result than that arrived at by the jury and the trial court, yet, upon the whole, we can not say that there was not sufficient evidence to sustain the judgment. The claim was a stale one, and the plaintiff below stated that the deceased owed him nothing. He did not deny this although he was a competent witness to make the denial or explain his admission; yet there is sufficient evidence to sustain the judgment. The law was fairly presented to the jury, with one exception, the matter of the destruction of the books, and a proper instruction was not requested upon this point. The services rendered were of the most menial character, and were performed at unusual hours, and the circum-

stances of the case lead us to believe that Peterson was relying largely upon the bounty of his employer, and expected provision to be made for him in the will. It seems as if much difficulty could have been avoided in the case, and the truth clearly ascertained, either by probing the conscience of the plaintiff below by interrogatories as to the original contract and as to payments, by permitting him to testify to the facts in court, or by calling him as a witness. The executor can not be deprived of his right to compel the adverse party to testify as he might any other witness, under our code provisions. What is intended for the protection of the estate in guarding it against fraudulent claims or unfounded causes of action, should not be permitted to operate as a source of injury, and many times the interests of an estate may urgently require that an executor or an administrator should waive what belongs to him as a privilege, and call the opposite party as a witness. '' The facts upon which he founds his defense or upon which he bases his claim may be locked in the breast of the adverse party, and without his testimony a failure of justice may ensue. The legislature could not have designed to place the estate of deceased persons at such disadvantage by depriving them of evidence within reach necessary to their protection against imposition and fraud. The adverse and surviving party when compelled to testify by the executor and administrator can not reasonably complain; for, although a party, he can then be examined fully in his own behalf on the subject of his examination in chief. (Nichols v. Esterly, 16 Kan., 32; Wharton on Evidence; Sec. 475 a''; Roberts v. Briscoe, 44 Ohio St., 596, 602.) These extracts are from the opinion of the Supreme Court of Ohio, under statutory provisions identical with ours, including the provision that an adverse party may be compelled to testify the same as any other witness. Rev. Stat. Wyo., Sec. 2591. While counsel are not compelled to resort to such means in a case like the one under consideration, such a course would be highly commendable, and would tend to dissipate the

doubts and difficulties that render the case obscure. We do not intend these remarks as a censure or rebuke to the eminent counsel who participated in the trial of this cause, but they may serve to hereafter secure the elicitation of truth in a parallel case, the great object in view in the administration of justice.

The judgment of the district court for Laramie County is affirmed.

Mr. Justice Potter, having been of counsel in the trial court, Hon. J. H. Hayford, Judge of the district court of the second judicial district, sat in his stead.

CONAWAY, J. and HAYFORD. Dist. J., concur.