OCTOBER TERM, 1945

BARBARA ROBERTS, *Plaintiff and Appellant,*

vs.

DON ROBERTS, as Administrator of the Estate of ORA P. ROBERTS, Deceased,
*Defendant and Respondent.*

(No. 2319; October 1st, 1945; 162 Pac. (2d) 117)

For the Plaintiff and Appellant, the cause was submitted on the brief of Charles E. Winter and R. R. Rose, both of Casper, Wyoming, and oral argument by Mr. Rose.

For the Defendant and Respondent, the cause was submitted on the brief and also oral argument of William J. Wehrli, Casper, Wyoming.

## OPINION

KIMBALL, Justice.

This is an appeal by plaintiff, Barbara Roberts, from a judgment against her after a demurrer to her petition had been sustained and she had elected to stand

on the petition, in an action against the administrator of the estate of Ora P. Roberts, deceased, in which plaintiff sought to establish against the estate her claim on account of services performed for and moneys loaned to decedent by plaintiff during the period February 18, 1927, to June 23, 1940.

The petition contains three causes of action. The first and second set forth the claim of wages for services, the first declaring upon an express contract, the second upon a *quantum meruit*. The third cause of action is for recovery of money loaned.

The petition and exhibits that are made a part of it, show the following facts that seem relevant on the questions raised by the demurrer:

Ora P. Roberts died June 23, 1940, and on June 27, 1940, letters of administration were issued to plaintiff upon her application as widow of the decedent, and she acted as administratrix until July 10, 1943.

April 22, 1941, she filed in the office of the clerk of court her claim in two items, one for wages for services and the other for moneys loaned, as mentioned above. January 27, 1942, objections to the claim were filed with said clerk "by certain brothers and sisters of the decedent, and her claim and said objections were duly set down for hearing and were heard" by the district judge August 3, 1942. "At said hearing the plaintiff, believing herself to have been the wife and then to be the widow of said decedent and believing and being advised that as such wife and widow she could not legally claim wages from said decedent, through her attorney of record waived her claim for such wages and submitted no proof in support thereof, and said claim was disallowed and rejected by the court by its order filed on or about the 25th day of September, 1942."

August 8, 1942, in a proceeding involving the question whether plaintiff and decedent were legally married, the district court adjudged that they were not, and upon appeal to the supreme court the judgment of the district court was affirmed February 2, 1943, and rehearing denied in May, 1943. (See Roberts v. Roberts, 58 Wyo. 438, 133 P. (2d) 492).

July 10, 1943, plaintiff ceased to act as administratrix and letters of administration were issued to defendant.

"Thereafter, it being made to appear to plaintiff and she being advised that in pursuing her claim to be the wife and heir at law of said decedent and in waiving her claim for wages for services rendered to him, she had mistaken her legal remedy and in view of the aforesaid decision of the supreme court had been in legal error as to her rights and remedy," plaintiff filed with the clerk and presented to the defendant and to the district judge, "her amendment to the aforesaid claim for wages, which said amendment and the aforesaid claim as amended was by said judge disallowed and rejected on or about the 30th day of August, 1943; and on the 25th day of September, 1943, the defendant administrator rejected said amendment and claim as amended and made an endorsement on said amendment signed by him as administrator reciting that said amendment was on said last mentioned date presented to him and that he concurred in the disallowance and rejection of said claim by order of the court of September 21, 1942; * * *."

The so-called amendment of the claim for wages states the facts in regard to the filing of the original claim, its presentation to the judge, the hearing thereon, and the disallowance of the claim by an order reciting "that at said hearing this claimant's claim for wages was expressly waived and no proof offered in

support thereof and said claim was not supported by the evidence." The amendment then recites the proceeding where in it was decided that plaintiff was not the widow of the deceased, and states that in view of said decision "claimant in waiving her claim for wages on account of services rendered, mistook her remedy, and now withdraws her aforesaid waiver * * * and presents to the present administrator * * * this amendment to said claim," and asks that the claim as amended be allowed.

The present action was commenced November 27, 1943.

The demurrer to the petition was on the ground that each cause of action does not state facts sufficient to constitute a cause of action. From the arguments it appears that the demurrer was not intended to challenge the allegations in regard to the performance of the services and the lending of the money, but it is contended that, from other facts stated in the petition, as outlined above, it appears that the claim is barred on principles of res judicata, estoppel or election of remedies, or because the action was not commenced in time.

It is contended that the rejection of the claim by the judge in the probate proceedings was a final and conclusive decision, which operates as res judicata precluding relief in the present action. We think the statutes show that the order rejecting the claim cannot be given that effect. The claim was first presented while the plaintiff was the administratrix of the estate. The applicable statute of the probate code provides:

"88-3119. If the executor or administrator is a creditor of the decedent, his claim, duly authenticated by affidavit, must be presented for allowance or rejection to a judge of the district court, and its allowance by the judge is sufficient evidence of its correctness,

and it must be paid as other claims in due course of administration. If, however, the judge reject the claim, action thereon may be had against the estate by the claimant, and summons must be served upon the judge, who may appoint an attorney, at the expense of the estate, to defend the action. * * *"

This is the only statute called to our attention that makes specific mention of a claim by an executor or administrator who is a creditor of the decedent. His right to bring an "action" on the claim after it has been rejected by the judge in probate is expressly granted or reserved. The rejection may be final in the sense that it does not contemplate any further action to make it effectual as a rejection in the probate court, but it is clear from the very words of the statute that it cannot be considered final for the purpose of preventing an action on the claim.

Defendant refers to Section 88-3108, R. S. 1931, providing that "when a claim is presented to a judge or commissioner for his allowance, he may, in his discretion, examine the claimant and others under oath, and hear any legal evidence touching the validity of the claim," and it is argued that when the judge acts under that section, and, as recited in the petition, objections are filed and a hearing had, the proceeding is not ex parte, and the order of rejection, therefore, ought to be treated as a final decision on the merits, which is not subject to attack except on appeal from the order.

The quoted provision of Section 88-3108 merely states what the judge may, in his discretion, do in investigating a claim. It does not purport to provide what the claimant may do after rejection. That is provided in Section 88-3119, as explained above. We do not think the right to bring an action after rejection of the claim depends on the nature of the investigation made by the judge. We may note in passing that "all matters, including allowed claims," may be contested

by heirs, under Section 88-2710, R. S. 1931, and there are authorities indicating that under statutes like ours, an heir's objection to a claim before its allowance is premature. See In re Tamer's Estate, 20 Ariz. 228, 179 Pac. 643; In re Parkes' Estate, 105 Wash. 586, 178 Pac. 830.

There can be no doubt that the "action" mentioned in Section 88-3119, supra, means an ordinary proceeding in a court of justice, involving process, pleadings and ending in a judgment. See Anderson v. Englehart, 18 Wyo. 196, 204, 105 Pac. 571, 573, quoting from Missionary Society v. Ely, 56 Oh. St. 405, 47 NE 537. The claimant may bring the action in any court of competent jurisdiction, which may be, depending upon the nature and amount of the claim, a justice's court, a district court when functioning as the court of general jurisdiction, or even in the federal court. See Bancroft's Probate Practice, § 872, p. 1511; 11a Calif. Jur. p. 642, § 600. The action may not be brought in the probate court, as it does not have jurisdiction to entertain the action. See In re Thurnell's Estate (Calif. App.) 19 P. (2d), 14, 20, and cases cited; Estate of Turner, 5 Coff. Prob. 424.

In this state appeals from a final order in probate may be taken under Section 88-911, R. S. 1931, which provides:

"The provisions of the code of civil procedure, relative to new trials and appeals—except in so far as they are inconsistent with the provisions of the probate code—apply to the proceedings mentioned therein. All appeals and proceedings in error from any final order in probate proceedings shall be taken to the supreme court."

An appeal to the supreme court from the order rejecting the claim would not be a suitable substitute for the right the claimant has to bring an "action". Such

an appeal would avoid contact with the courts having jurisdiction to try and determine such actions.

Section 88-3119, supra, does not limit the time for bringing an action on the claim, after its rejection in probate, except by providing that the action may be had against the estate, and defended at the expense of the estate. There would be no reason for holding that the action would be barred under that section, except by failure to bring it before the estate was closed.

Defendant claims, however, that the action is barred by the limitation mentioned in Section 88-3107, R. S. 1931, which reads as follows:

"When a claim is rejected, either by the executor or administrator, and notice given as required by § 88-3105, the holder must bring suit in the proper court against the executor or administrator within three months after the date of mailing such notice, if it be then due, or within two months after it becomes due, otherwise the claim shall be forever barred.".

Section 88-3105, referred to in Section 88-3107, provides that when a claim "is rejected in whole or in part, the administrator or executor shall immediately, upon such rejection notify the claimant by registered mail." These provisions of sections 88-3105 and 88-3107, in regard to notice of rejection were inserted by amendments in 1931. Session Laws of 1931, Ch. 73, §§ 135, 136.

It is at once apparent that section 88-3107 contains no words to show that it was meant to apply to a claim of an administrator under Section 88-3119. Section 88-3107 mentions only claims rejected either by the executor or administrator, while Section 88-3119 speaks only of claims rejected by the judge; 88-3107 makes the limitation period start on the date of mailing a notice of rejection by the executor or administrator, which would be meaningless as applied to the adminis-

trator's own claim; 88-3107 declares that the holder must (may) bring suit against the executor or administrator, while Section 88-3119 authorizes an action against the estate to be represented by an attorney appointed by the judge.

It was said in an early case that "the doctrine is well established in the construction of statutes of limitation that cases within the reason, but not within the words of the statute are not barred, but may be considered as omitted cases, which the legislature have not deemed proper to limit * * *. Nor is this doctrine at war with that so frequently held in the books, that the statute is to be liberally expounded." Bedell v. Janney, 4 Gilm. (9 Ill.) 193, 208. Later cases stating the same general principle are Eclipse Lumber Co. v. Iowa Loan & Trust Co. (C. C. A. 8th) 38 F. (2d) 608, 610, and Fish v. Collins, 164 Wis. 457, 160 N. W. 163. See, also, Lewis' Sutherland on Statutory Construction, § 544; Maxwell on Statutory Interpretation, (8th Ed.) p. 250; Wood on Limitation of Actions (4th Ed.) § 11b, p. 56. In Roddam v. Morley, 1 De G. & J. 1, 23, 44 Eng. Reprint, 622, 630, a case cited in Maxwell and Sutherland, Lord Cranworth, after saying that a statute of limitations may often be a very righteous defense, continues: "But it must be borne in mind that it is a defense the creature of positive law, and therefore not to be extended to cases which are not strictly within the enactment." In 37 C. J. 691, it is said that "it is a familiar principle that a statute of limitations should not be applied to cases not clearly within its provisions; it should not be extended by construction." In Hatch v. Spofford, 24 Conn. 432, 438, a case cited by Wood, supra, it is said that statutes of limitations are "to be construed and applied according to the exact and specific language of the enactments, and not upon any supposed general and abstract principles of equity. Courts

may not extend them to cases, because they seem to be of an analogous character."

We hold that the limitation of Section 88-3107 cannot be applied by analogy to the claim of the administratrix presented to and rejected by the judge under Section 88-3119.

On July 10, 1943, probably because of the decision that plaintiff was not the widow of the decedent, the defendant was appointed administrator to succeed her. This automatically changed the character of her claim. It then became an ordinary creditor's claim presentable to the administrator, and defendant insists that we should apply Section 88-3107 to that situation, and hold that the suit should have been commenced within three months after July 10, 1943. But the limitation period, as shown in Section 88-3107, quoted above, begins to run on the date of mailing the notice of rejection by the administrator. The rejection by the administrator in this case was on September 25, 1943. The petition does not show that a notice of rejection was ever mailed, and whether or not it was mailed is now immaterial. See, however, Quinn Wire & Iron Works v. Boyd, 52 N. Dak. 273, 202 N. W. 852; Holt v. Mickelson, 41 Idaho 694, 242 P. 977. We think the action commenced November 27, 1943, less than three months after the rejection of the claim by defendant, was in time.

The contention that the petition shows that the action is barred by estoppel or election of remedies is directed at the first and second causes of action based on the claim of wages for services.

In discussing estoppel, as distinguished from election of remedies, defendant relies mainly on Poston v. Delfelder, 39 Wyo. 163, 270 P. 1068, but we think that case is not in point. The plaintiff has made no misre-

presentation of fact and no one has been deceived to his detriment.

In August 1942, plaintiff waived her claim for wages because she was then pressing an admittedly inconsistent claim as widow of the decedent. Now, after it has been decided that she has no claim as widow, she seeks the opportunity to prove the claim for wages. She ought not to be denied this opportunity because, without consideration, she stated that she waived the claim, in a proceeding in which there could have been no final adjudication that would prevent the prosecution of an action on the claim. We have said that "waiver" is a very flexible and not always definite term (Barber v. Sheridan Trust & Savings Bank, 53 Wyo. 65, 86, 78 P. (2d) 1101, 1108), and that it is generally defined as consisting in the "relinquishment of a known right" (Howrey v. Star Ins. Co. 46 Wyo. 409, 421, 28 P. (2d) 477, 479). The plaintiff in "waiving" her claim for wages, did not relinquish a known right, for she then thought she had a different and inconsistent right. It is said in Williston on Contracts (Revised Edition) § 684, p. 1973:

"If a party erroneously supposing he had an election offered him actually intended to surrender a right and assert a supposed alternative which did not exist, the right which in fact he had would not be lost in the absence of circumstances of promissory estoppel."

We think the petition does not state facts that justify a holding that the action is barred by estoppel or waiver. This may appear more clearly from authorities on election of remedies, sometimes referred to as estoppel or waiver by election.

We think the authorities show that the present action is not barred on the ground that plaintiff had prosecuted the former action in which she sought a different remedy that she could not have. As tersely stated

in Holbrook v. Quinlan & Co., 84 Vt. 411, 420, 80 Atl. 339, "the pursuit of a remedy which does not exist is no bar." "If in truth there is but one remedy, and not a choice between two, a fruitless recourse to a remedy withheld does not bar recourse thereafter to the remedy allowed." Judge Cardozo in Schenck v. State Line Tel. Co. 238 N. Y. 308, 144 N. E. 592, 35 A. L. R. 1149, citing many cases. "It is well established that the choice of a fancied remedy and the futile pursuit of it, because either the facts turn out to be different from what the party supposed them to be or the law applicable to the facts is found to be other than supposed, and although the first action proceeds to judgment, do not preclude the plaintiff from thereafter invoking the proper remedy." 18 Am. Jur. 147, citing a column of cases. That this is so, whether the mistake in prosecuting the first action was of fact or of law, see, further, Standard Oil Co. v. Hawkins, 74 Fed. 395, 33 L. R. A. 739; Gardner v. Gauthier, 101 Vt. 147, 141 Atl. 682.

Asher v. Pegg, 146 Ia. 541, 123 N. W. 739, 30 L. R. A. (N. S.) 890, required a consideration of facts strikingly similar to those in the case at bar. The plaintiff had first asserted her right to a widow's share in the estate of a decedent, in an action in which it was decided by the supreme court, affirming the decision of the trial court, that she and the decedent had not been legally married. Thereafter, plaintiff filed her claim in probate for wages for services performed for deceased in his life-time. This claim was resisted on the grounds that it was not filed within the statutory period for filing claims, and that plaintiff had elected to assert a claim as widow which was inconsistent with her right to have compensation for services. In regard to the defense of election of remedies, the opinion contains these statements:

"It cannot properly be said that the prior action and proceeding in which plaintiff alleged that she lived with deceased as his wife was an election of remedies precluding her from now taking a position in this action as to the facts which is inconsistent with her position formerly taken * * *. There is no identity whatever either in law or of fact between the claim asserted in the former action and the one which is now being asserted. Plaintiff entirely mistook her remedy in the former action and asserted a state of facts that did not exist; that is, which was subsequently found in the proceeding not to be established by the evidence. This was a plain case of mistake of remedy, and not election of remedy. * * * If a claim is made which, as developed in subsequent proceedings, does not exist, then the claimant is not barred from asserting in an independent action that an inconsistent claim existed entitling him to legal redress."

Counsel for defendant seeks to distinguish Asher v. Pegg, on the ground that Asher filed no claim for wages until after the supreme court had decided she had no claim as widow, while plaintiff in our case filed her claim and then decided to waive it, before the decision that she was not the widow. We think that difference in the two cases is immaterial on the question of election of remedies.

It is also suggested that two later Iowa cases, Sackett v. Farmers' State Bank, 209 Ia. 487, 228 N. W. 51, and Lindburg v. Engster 220 Ia. 1073, 264 N. W. 31, are contrary to Asher v. Pegg, supra. We do not think so. Indeed, the case of Sackett v. Farmers' State Bank, in stating when a right to redress will be barred on the ground of election, expressly recognizes that there must be conditions not present in Asher v. Pegg or in our case.

It follows from what we hold above that the demurrer should be overruled. The judgment will be reversed and the case remanded for further proceedings consistent with this opinion.

BLUME, Ch. J., and RINER, J., concur.