BARBARA ROBERTS,

*Plaintiff and Appellant,*

vs.

DON ROBERTS, as Administrator of the estate of Ora P. Roberts, Deceased,

*Defendant and Respondent.*

(No. 2383; July 13th, 1948; 196 Pac. (2d) 361)

434

For the Plaintiff and Appellant, the cause was submitted upon the brief of R. R. Rose and Chas. E. Winter of Casper, Wyoming and oral argument by Mr. Rose.

For the Defendant and Respondent, the cause was submitted upon the brief and also oral argument of Wm. J. Wehrli of Casper, Wyoming.

438

## OPINION

TIDBALL, District Judge.

In this case the trial court at the close of all the evidence directed a verdict for defendant. The plaintiff sued defendant, who was administrator of the estate of Ora P. Roberts for money, the petition containing three causes of action. The first two are for money claimed to be due plaintiff as wages for services rendered Ora P. Roberts in his lifetime, the first declaring upon an express contract and the second upon a quantum meruit or implied contract. The third cause is for money loaned deceased during his lifetime. The plaintiff claimed in her petition that the services were rendered and the money loaned during the period from February 18, 1927, to June 23, 1940, the date of Ora P. Roberts' death.

The plaintiff's petition was before this court on October 1, 1945, upon the question as to whether it stated good causes of action not barred by statutes of limitation and the question was then resolved in favor of the plaintiff, Barbara Roberts. See case reported in 162 Pac. (2d) 117. The opinion in that case should be read in conjunction with the present opinion, because in the former opinion all the facts leading up to the trial of the present case are stated and will not be repeated in detail again and we think also two of the questions of law raised in the present case by the defendant administrator and respondent were answered in that case in a manner contrary to the contention of the respondent in the present controversy, and will not be gone into again in this opinion except to point out that this court has already passed upon them in the former opinion.

When Ora P. Roberts died on June 23, 1940, Barbara Roberts, the plaintiff and appellant herein, was appointed administratrix of his estate and served as such till July 10, 1943, when she was succeeded by Don Roberts, the defendant and respondent herein. On April 22, 1941, she filed her claim in the estate for the wages earned and money loaned, claiming $7,400 for wages and $9,194.29 for money loaned. This claim was rejected by the District Judge handling this estate on September 21, 1942, but before that action was taken, claimant waived her claim for wages upon the theory that she being the wife of deceased, could not recover such wages. On February 2, 1943, this court decided that common law marriages entered into in Wyoming are void and that plaintiff was not the widow of deceased. On August 20, 1943, plaintiff and appellant filed what she designated as "Amendment to Claim of Barbara Roberts," in which amendment she set forth that her original claim for wages had been withdrawn or waived under the mistaken belief that she was the

wife of Ora P. Roberts. On August 30, 1943, the amended claim was rejected by the District Judge who had previously rejected the claim on September 21, 1942. On September 25, 1943, the claim of plaintiff and appellant was rejected by Don Roberts, administrator, he concurring in the previous rejection of the claim by the District Judge on September 21, 1942. On November 27, 1943, this present action was begun and on September 29, 1944, a demurrer to plaintiff's petition was sustained by the trial court on the ground it failed to state a cause of action, and on October 20, 1944, judgment was entered by the trial court in favor of defendant based upon the ruling on the demurrer; and on October 1, 1945, this court reversed the ruling of the trial court, holding that the petition stated a cause of action. Thereafter the matter came on for trial to a jury in the District Court, another District Judge presiding, resulting in a directed verdict and judgment for defendant entered on April 18, 1947. One further date should be here stated and that is the date of November 1, 1934, when apparently through some ceremony performed at a neighboring ranch, in the presence of witnesses, and on the advise of a lawyer, the plaintiff and Ora P. Roberts declared themselves to be husband and wife, both believing that this constituted a valid common law marriage. (Roberts vs. Roberts, 58 Wyo. 438, 133 Pac. (2d) 492).

In our discussion of this case we are assuming that plaintiff and appellant honestly believed she was married to Ora P. Roberts on November 1, 1934. There is no evidence on that point from either side and respondent in his brief does not raise the question as to the good faith of plaintiff. In plaintiff's petition she alleges, "At said hearing (referring to the hearing before the District Judge on her claim) the plaintiff, believing herself to have been the wife and then to be

the widow of said decedent and believing and being advised that as such wife and widow she could not legally claim wages from said decedent ,through her attorney of record waived her claim for such wages and submitted to proof in support thereof, and said claim was disallowed and rejected." This allegation is admitted in defendant's answer. However, later in the answer in the fourth defense it is alleged that "Plaintiff knowingly and voluntarily lived in such illicit cohabitation with said decedent." The above-mentioned case of Roberts vs. Roberts does not decide the point, but since her good faith was not questioned by respondent either in his brief nor in his oral argument in this court, we shall assume that such good faith existed and in another trial of the case perhaps evidence on that point can be obtained.

Respondent claims that the present action was not begun in time under the Probate Code (§ 6-1607 C. S. 1945) for the reason it was not begun within three months after the claim was rejected by the court September 21, 1942, and the amended claim filed August 20, 1943, was not filed within six months after the first publication of notice to creditors on June 28, 1940. We think this court in the Roberts case (Roberts vs. Roberts, 62 Wyo. 77, 162 Pac. (2d) 117) ruled against both of respondents' contentions and we shall not further discuss them.

This brings us to the question whether the trial court erred in directing a verdict for defendant on all three causes of action contained in the petition. We shall discuss first the third cause of action based on the claimed loans made by plaintiff to decedent in his lifetime. It is alleged in the petition that between February 18, 1927, and June 23, 1940, plaintiff loaned decedent at his request at various times various sums of money aggregating the total amount of $9,194.29 which various

sums decedent agreed to repay and that he failed to repay any of them, and claim is made for the above sum with interest.

The evidence regarding the loans is about as follows, keeping in mind that neither of the parties who would know the facts could testify, Ora P. Roberts' mouth being closed by death and Barbara Roberts' being closed by the statute prohibiting a party from testifying when the opposite party is an administrator. (§ 3-2603 C. S. 1945).

Alice Kaiser, mother of plaintiff, testified by deposition that Barbara was Ora P. Roberts' wife, that she lived at the Roberts' ranch for about three years (probably 1935-1937). She saw money belonging to her daughter while she was living there in a trunk in a small room in envelopes in a wooden box. She knew her daughter loaned money to Mr. Roberts because she heard him ask for it and she saw her daughter give him money several times, but doesn't know how much and Mr. Roberts always said he'd pay it back and for her to keep an account of it. Major Ormsby visited at the Roberts' ranch frequently. In 1940 he talked to Roberts about his finances at the Roberts' ranch when only he, and Mr. and Mrs. Roberts were present. Roberts told him definitely that Mrs. Roberts had advanced him about $7000.00 and that he was to return it to her. From the conversation Roberts borrowed $7000.00 from Barbara from the time she came out there until shortly before Roberts died, starting with 1927. Roberts didn't give any dates or when it was. "I saw her turn money over to him twice in 1939 and 1940. It was about $50. I don't know it was her money." Flora Law testified that in the Spring of 1934 at her place of business in Casper she had a conversation with Mr. and Mrs. Roberts. Mrs. Roberts was there running a restaurant in Casper and Roberts was trying to induce her to come back to

the ranch and unless she did so he was leaving the ranch and they would lose what they had out there. "As I understand it, the money she had invested was money she had lent him to invest in cattle." Again in 1940 witness had a conversation with Roberts when he said he thought he should have some papers fixed up, that he was sick, and if anything happened to him she would lose her interest there. On cross examination the witness said that she understood in 1934 that Mrs. Roberts had about $800 invested. Jack Denny testified that Ora Roberts told him in 1931 that Barbara came to the ranch in 1927 when they went into partnership in the dude ranch business or something to that effect. The witness frequently visited the Roberts' ranch. He was there in 1940 and had a conversation with Mr. Roberts in the presence of Mrs. Roberts, the witness and Ora Roberts being seated at a table about forty inches wide. Roberts inquired if the witness knew anybody who had money to loan and the witness named a person who made loans. The witness asked Roberts, "How much do you need?" Then Roberts called Mrs. Roberts and said, "Give me your book and let me figure up and see how much I owe you." She got a book, a small account book about 4½ by 6½ inches, as identified by the witness, containing about one hundred pages, marked Plaintiff's Exhibit 4, and containing seven pages about one-third of the way from the front of the book, with certain sums set down in pencil with a date after each sum, with the word "cash" following most entries. The first of the seven pages is headed "Loan to Ora Roberts, January 22, 1930, in cash $400." and below follow the entries above-described. At the top of the third page is "Saving" and below that, "May 20, 1933, Loan to Ora Roberts $100 in cash." followed by entries as above-described. The other pages have no heading. Some eight pages have been removed from the front of the book and about the same number from the

back. The total of all the sums set down is $5972.00. On the first eight pages of the book are apparent names and addresses of different persons and on the last three pages are miscellaneous matters. This was the book the witness testified Mrs. Roberts brought. It was on the table, the witness never having it in his hands. He testified, "I didn't exactly take particular notice but I recognized the handwriting." He didn't say whose handwriting it was and Mr. Roberts didn't tell the witness who made the entries. Roberts had a sheet of tablet paper and was kind of slouched over and the book was lying almost in the center of the table. Witness was in a position to see the pages in the book from which Roberts was figuring. The pages above-described were the pages. Roberts took the figures out of the book, set them on a piece of paper, figured them up and, "I said, 'Well, how much are you going to need?' And he said, 'I am going to need in the neighborhood of $7000.00.' Then Roberts said, 'I owe her more than this outfit is worth right now. I owe her wages ever since 1927, and I owe her for this money I borrowed. I am going to fix up some papers that protect her interest. If I don't get these fixed up you know what the set up is, and I want her to have everything." Witness never saw the book in question but that one time before he saw it at the trial. Later on being recalled Denny testified that the conversation he had with Roberts when the book was on the table was between the first and tenth of March, 1940, and that Roberts said he gave Mrs. Roberts orders to "keep down" all the money he had borrowed from her and that the entries in the book were correct. The above is the evidence concerning the money loaned.

It will be seen that the plaintiff sued for $9194.20; Roberts told Major Ormbsy in 1940 shortly before Roberts' death that Mrs. Roberts had advanced him

about $7000; Flora Law testified that in 1934 she understood the sum invested by Mrs. Roberts was about $800.00; and the sum of the amounts set down in the book that Roberts told Denny was correct amounted to $5972.00, or to $3600 during the period of eight years before the commencement of this action.

Appellant in her brief claims that the pages of this book should have been admitted, "not because they were records of account or shop-book records, strictly speaking, not because they were made in due course of business or, primarily, that they were made under the direction or by the authority of decedent Roberts, but because, however informally made and regardless of by whom they were made, they were shown to and examined by Ora Roberts, and by him stated to be correct." In 32 C. J. S. page 584, Sec. 694b the rule is stated:

"Entries in the books of account of one party may be received as admissions of the adverse party where their correctness has been assented to by the latter. . . . If the correctness of the entries is admitted, they are admissible, even though they are not original or not regularly kept, and even though the items are not the subject of book charge under the shop book rule."

The same rule is stated in 22 C. J. 891, Sec. 1088. See also 20 Am. Jur. 905, Sec. 1058 and 52 L. R. A. 598. The cases cited in these authorities uphold such rule. In Burnham vs. Rowley, 111 Wash. 656, 191 Pac. 811, the court said, "Whether the ledger account was admissible under what is known as the 'shop book' rule need not be determined. The appellant testified that just prior to the time he filed his inventory, this account was shown to Mr. Rowley (now deceased), and he then admitted that it was correct. Under this testimony we think the account should have been admitted in evidence." See also Commonwealth vs. Grotzner, 125 Pa. S. 305, 189 A. 495, and Wilkins-Ricks Company vs.

McPhail, 169 N. C. 558,,86 S. E. 502. The witness
Denny having testified that Mr. Roberts saw this book
in 1940, took the figures therefrom and added them and
said they were correct and showed the amount he had
borrowed from Mrs. Roberts, it would seem the book
should have been admitted unless there is some other
reason why it should have been excluded. In addition to
the manner in which the book was kept, mentioned
above, respondent claims several reasons as to why the
pages should not have been admitted. First there is no
evidence the pages were in the same condition when
offered as when Denny saw them in 1940. It is true
there is no such direct evidence, but Denny testified
that he saw the pages in 1940 when the book was open
on the table and that the ones shown him at the trial
and offered in evidence were the same pages. Next
respondent claims there is no identification of the
handwriting of these pages. That is true. However,
where the entries have been admitted by the opposite
party to be correct, it would seem the handwriting
would be of little consequence; in fact they might be
typewritten. Denny said he recognized the handwrit-
ing but probably meant the handwriting was the same
when he first saw the book in 1940 and when shown him
at the trial. Respondent also says there is no testi-
mony as to when the entries were made. While that is
true, it would seem that if· the identification of Denny
was sufficient to go to the jury, then it would make no
difference as to when they were made, that is to say if
the entries were the same in 1940 when Roberts is
claimed to have admitted their correctness as when
offered in evidence, the time of their entry in the book
or by whom made would be immaterial. Further Re-
spondent says the entries themselves do not disclose
that they represent money loaned by plaintiff to de-
cedent. The answer to this is as above that if they are
the same entries that Roberts admitted represented

money loaned, the fact that the entries themselves fail to show just what they represent would not matter. It is next contended that the entries fail to show the dates when money was loaned. But each entry is dated and if Roberts admitted they correctly showed loans made, we think we could assume he admitted the dates. Lastly respondent says that under the doctrine of the case of Cross vs. Amoretti, 44 Wyo. 175, 9 Pac. (2nd) 147, the book was not admissible, it being held in that case that the lenders books are incompetent to prove loans to a decedent. The answer to that it that the Pages were not offered as an account book but as a writing admitted by decedent to be correct. So it would seem that if the pages were properly excluded it was because the testimony of Denny did not sufficiently identify the pages offered as the pages Roberts admitted to be correct in 1940. We are inclined to think that is correct when there is taken into consideration the condition of the book with several pages missing, the opportunity Denny had to examine the pages in 1940, and the fact that the total of the items in the book do not correspond with the amount plaintiff claimed in her petition, the amount Roberts told Ormsby he owed plaintiff, nor the amount Roberts stated to Denny it would be necessary for him to borrow, which was $7000.00, and this is especially true when we consider the rule as heretofore announced by this court in Casper National Bank vs. Curry, 51 Wyo. 284, 65 Pac. (2nd) 1116, to the effect— "That claims against the estates of deceased persons should be scrutinized with care and not permitted to prevail except upon clear proof."

We come now to the claim for services. Under the rule of law frequently declared by this court, when a motion for directed verdict is made, all the competent evidence of the plaintiff must be taken as true. In the case at bar there is no conflict on the main issues. The plaintiff went to work as a housekeeper and cook on the

Roberts' ranch in 1927 and continued until the winter of 1933-34 when she went to Casper and started a restaurant and remained in Casper until sometime in 1934, when she was induced by Mr. Roberts to go back to the ranch where she remained until his death, June 23, 1940. The evidence fails to show just when she went back to the ranch but she was there on November 1, 1934, the day they entered into the marriage contract and we shall consider the case as though she resumed work on the Roberts' ranch on that date, supposing she was the wife of Roberts from then till his death and living and cohabiting with him from November 1, 1934, until his death.

The first cause of action in plaintiff's petition is upon an express contract which it is alleged plaintiff and decedent entered into and by which he agreed to pay her $50 a month for her services as long as she stayed on the ranch, together with board and lodging. Appellant contends that the evidence shows a continuous employment from 1927 when she first went to the Roberts' ranch until his death, but we do not think so. She went to Casper, as above stated, in 1933 and went into business for herself in a restaurant and continued in such business until sometime in 1934 previous to November 1, when she was induced by Roberts to give up that business and go back to his ranch. Probably one of the inducements was that they would marry. At any rate we think there must have been a new arrangement and that the continuity of the former employment had been broken in 1933 when she left the ranch, moved to Casper and opened a restaurant. The cause of action for wages previously earned accrued at that time, and as the action was not commenced within eight years thereafter, that part of plaintiff's claim for services is barred by the applicable statute of limitations, Section 3-505, C. S. 1945.

We shall next consider her right to recover beginning as of November 1, 1934, the date of the attempted marriage, until Roberts' death. The rule as to the statute of limitations in a case of this kind where services are rendered under an agreement indefinite as to length of service and the mode or rate of compensation, in many jurisdictions, is that the contract is a continuing one and that the employee's right of action accrues and the statute begins to run when and only when the services are fully performed or the employment otherwise terminated, and it is immaterial whether the contract is express or implied (37 C. J. 824). And that is the rule as announced by this court in Jackson vs. Mull, 6 Wyo. 55, 42 Pac. 603, and in Hay vs. Peterson, 6 Wyo. 419, 45 Pac. 1073. It would seem that in a case like the one at bar where a cause of action arises not from any contract but because services were rendered under the mistaken belief that plaintiff was Roberts' wife, the case would be analogous to fraud, and the cause of action would not accrue until the discovery of the mistake, that is that no marriage existed. So it would seem that plaintiff, if entitled to recover at all should recover from November 1, 1934, until the death of Mr. Roberts.

This brings us to the question as to an implied or quasi-contract pleaded in the second cause of action. Black's Law Dictionary defines it thus:

"A quasi-contract is what was formerly known as the contract implied in law; it has no reference to the intention or expressions of the parties. The obligation is imposed despite and frequently in frustration of their intention."

Ballentine's Law Dictionary defines it as follows:

"Sometimes called a contract implied in law, but more properly known as a quasi contract or constructive contract. It is a contract in the sense that it is remediable by the contractual remedy of assumpsit. The promise

is purely fictitious and is implied in order to fit the actual cause of action to the remedy. The liability under it exists from an implication of law that arises from the facts and circumstances independent of agreement or presumed intention."

Keener on Quasi-Contracts says (p. 19) :

"By far the most important and most numerous illustrations of the scope of quasi-contract are found in those cases where the plaintiff's right to recover rests upon the doctrine that a man shall not be allowed to enrich himself unjustly at the expense of another."

The case of Willis vs. Willis, 48 Wyo. 403, 49 Pac. (2nd) 670, is cited by respondent and it is claimed the rule announced in that case is applicable here. In that case it is said:

"There remains for disposition then the question as to whether or not the plaintiff is entitled to recover under an implied contract. It appears to be a well settled rule 'that a woman who knowingly and voluntarily lives in illicit relations with a man cannot recover on an implied contract for services rendered him during such relationship. Not only does the relationship as husband and wife negative that of master and servant, but such cohabitation, being in violation of principles of morality and chastity, and so against public policy, the law will not imply a promise to pay for services rendered under such circumstances.'"

Respondent contends that since this court determined in the Roberts' case cited above that plaintiff and Roberts were not married, their relationship was illicit and therefore the rule in the Willis case would prevent recovery upon an implied contract. Other cases cited by respondent are cases where the woman knew the relation to be illicit, the respondent contending that it is only in a case where the man has been guilty of fraud that the woman may recover. It must be recognized that most of the cases found on the subject are either cases where the woman knowingly entered into an

illicit affair with the man or was induced by fraud on his part to enter into the relationship. Those cases do not fit the facts in the case at bar because here both parties believed their common law marriage to be valid.

In the case of Cooper vs. Cooper, 147 Mass. 370, 9 Am. St. Rep. 721, 17 N. E. 892, it was held, where a woman was induced to marry a man by his false representations that he was divorced from his former wife and learned after his death that he was not divorced, that she could not recover on implied contract for her services, but that her action was a tort action for deceit. And in Cropsey vs. Sweeney, 27 Barb. (N. Y.) 310, it was held, where both parties believed the marriage was valid, that she could not recover on implied contract and since the husband was also innocent, no tort action for deceit would lie. The Cooper case is criticized adversely in Keener on Quasi-Contracts at page 321, the author contending she should be allowed to waive the tort and sue in contract, the author saying: "While if he had received nothing of value from the plaintiff, the plaintiff could only have sued for breach of promise to marry, or in tort for deceit, yet it is submitted that when he because of his tort enriched himself, the plaintiff, if she saw fit to sue, not for damages, but simply for compensation to the extent that the defendant had profited by his wrong, should have been allowed to do so."

The author points out two cases that refused to follow the Cooper case. In Williston on Contracts (Rev. Ed.) Sec. 1791, it is said:

"By the better view, the element of fraud is not essential; even where both parties are innocent recovery may be permitted to the extent that the one has been unjustly enriched at the expense of the other."

In the Restatement, Restitution, page 157, in illustrating an action in quasi-contract for unjust enrichment this illustration (3) is given:

"Mistakenly believing that he is properly divorced, A represents to B that he is single and goes through a ceremony of marriage with B. . . . B is entitled to the reasonable value of her services, upon proof that they are of greater value than the value of her support."

Except for the cases of Cooper vs. Cooper and Cropsey vs. Sweeny (supra), the cases very generally uphold the right of a woman who has been induced by deceit of a man to enter into a putative marriage with him to recover for the value of her services or recover a portion of the estate of the putative husband. Indeed the respondent admits this to be the law. Wolf vs. Fox, 178 Wis. 369, 190 N. W. 90 (which case is cited with apparent approval in Willis vs. Willis, supra). Note 31 A. L. R. 424. Sanguinetti vs. Sanguinetti, 9 Cal. 2d 95, 99, 69 Pac. 2d 845, 111 A. L. R. 342. In this case it is said:

"Where an invalid marriage has been procured by fraud of the de facto husband, who is aware of the invalidity of the marriage, the right of the wife who has acted in good faith to recover the reasonable value of her services over and above the value of the support and maintenance furnished her by her supposed husband, has been sustained in a number of jurisdictions, including this state (citing cases). The basis of recovery for services in the above-cited cases is quasi-contractual. The supposed husband has been unjustly enriched. . . . These services would not have been rendered but for a belief in the validity of the marriage. . . . It is just and equitable that the de facto husband should make compensation for what has been rendered to him under a mistaken belief in the validity of the marriage which was induced by his own fraud."

We have not found many cases of a putative marriage where both parties weer innocent and both believed the marriage to be valid. But there are a few. Nor have we found many cases where the putative wife was suing, as in the case at bar, for the value of services. We shall mention some of these cases. Santos vs. San-

tos, 32 Cal. App. (2nd) 62, 89 Pac. (2nd) 164, is a case where a man and woman obtained a marriage license and believed that had the effect of marrying them. Upon separation some thirteen years later she sued for half of the community property. While the court held that since they were not married there was strictly no community property, nevertheless allowed her one-half the property, the court saying:

"Defendant (the supposed husband) cannot be permitted to accept the labor, earnings, society and companionship of plaintiff (the supposed wife) for more than twelve years and retain for himself all the fruits of their labors and savings."

King vs. Jackson, 196 Okla. 327, 164 Pac. (2nd) 974, was a case where the husband had a former wife living from whom he wasn't divorced, though both he and his supposed second wife were apparently ignorant of that fact. After her supposed husband's death she sued for half of the property. The lower court apparently gave it to her on the theory that she and her supposed husband occupied the position of partners. The Supreme Court affirmed, apparently on the theory that since there was no marriage and they both worked to accumulate the property, they could equitably be treated as partners.

In the case of Fung Dai Kim Ah Leong vs. Lau Ah Leong, 27 Fed. (2) 582, two Chinese in Hawaii married according to the Chinese customs, though no license to wed was procured as was required by law—a situation very similar to the case at bar. They lived together for thirty-five years as husband and wife and had thirteen children besides accumulating property worth several hundred thousand dollars. At this juncture the Supreme Court of Hawaii, reversing a former opinion, held that a license was essential to a valid marriage and thereupon Lau Ah, the husband, kicked Fung Dai Kim

out and denied her any interest in the property and she sued for an interest in the property. The trial court dismissed her petition and the Supreme Court of Hawaii affirmed. The circuit court of appeals reversed quoting from Pomeroy's Equity Jurisprudence (4th Ed.) Vol. 2, pp. 1782-3:

"Whatever power, therefore, courts of equity possess to prevent and remove the consequences of fraud, they also possess in dealing with the effects of mistake." The court says:

"There are but few reported decisions involving questions of the property rights of a putative wife, where for one reason or another the supposed marriage turns out to be void, but in a majority of those which have come to our attention relief of some character has been granted."

Citing cases from Washington, California, Texas, Kansas and Oklahoma. The court then says:

"We conclude that plaintiff is entitled to a measure of relief. Upon the question of what standard should be applied in determining the amount and character thereof, the decided cases, as already indicated, are not in harmony, and perhaps no specific general rule can be formulated. Each case must be adjudged in the light of its own peculiar facts and the local law."

As shown by the above cases and as pointed out by Professor Alvin E. Evans in 9 Cornell Law Quarterly 246 in his article on "Property Interests Arising from Quasi-Marital Relations," some of the courts having community property laws have allowed the putative wife to take the share of the property she would have taken if the marriage had been legal, while in other states the courts have considered the parties as partners and divided the accumulated property as on the dissolution of a partnership; the tendency of the courts that have had the question before them, at least among the western states, being to allow the wife relief.

Here the putative wife has chosen to sue on an implied contract for the reasonable value of her services. Perhaps she might have brought an action for a division of the property. She could have found support in the decisions for such a choice. But we see no reason why she should not recover on an implied or quasi contract for the value of her services, over and above what she received by way of support during the time the parties lived together as husband and wife. In fixing the value of such services, the jury should have a right to consider the evidence in regard to the express contract as alleged in the first cause of action.

The judgment will be reversed, and the case remanded for a new trial.

RINER, Ch. J., and KIMBALL, J., concur.

### ON PETITION FOR REHEARING

(September 28th, 1948; 197 Pac. (2d) 697)

On Petition for Rehearing.
Rehearing Denied.

Wm. J. Wehrli, of Casper, for respondent in support of petition for rehearing.

### OPINION ON REHEARING

PER CURIAM.

Respondent has filed a petition for rehearing on the

ground that our opinion (supra, 196 P. 2d, 361) shows that the court failed to give consideration to the facts with reference to respondent's contention that appellant's claim was not filed or exhibited within the time limited in the notice to creditors. § 6-1603, C. S. 1945. That time under the statute, before it was amended in 1943, was ten months after the first publication of the notice. § 88-3101, R. S. 1931.

The contention was rejected without discussion (196 P. 2d, at 363) because we thought the court had ruled against respondent on that point in a former appeal in the same case, Roberts v. Roberts, 62 Wyo. 77, 162 P. 2d, 117. The former appeal was from a judgment against plaintiff (appellant) after a demurrer to her petition had been sustained. The petition contained no allegation in regard to the publication of notice to creditors, and there was no comment on that subject in the court's opinion holding that the demurrer should have been overruled. Respondent argues, therefore, that the decision on the former appeal cannot be accepted as a ruling against him on the contention that appellant's claim for wages was not filed or exhibited within ten months after the first publication of the notice. After the case was remanded, following the decision on the former appeal, respondent (defendant) in his answer alleged, and at the trial proved, that the notice to creditors was duly published, and that the first publication was on June 28, 1940. It thus appeared that the time for filing or exhibiting claims expired April 28, 1941.

The other relevant facts in regard to the filing or exhibiting of the claim for wages appeared from the record before the court on the former appeal. The claim was filed April 22, 1941, while the appellant was administratrix of the estate, believing and claiming that she was the widow of the intestate. It was for "work,

labor and services performed from February 18, 1927 to June 23, 1940, less six months each during winter of 1933 and 1934 and winter of 1935 and 1936, at a reasonable sum per month of $50 per month. Total 12 years and 4 months, $7400." In August, 1942, appellant waived the claim for reasons set forth, 162 P. 2d, at page 118 and 196 P. 2d, at page 363. In August, 1943, after it had been decided that she was not the widow of the intestate, and respondent had been appointed administrator to succeed her, she filed a so-called amendment of the claim (162 P. 2d, at page 119) which made no change in regard to the performance or value of the services, but recited the facts from which the court held (162 P. 2d, at page 121) that the claim, first presented as a claim of the administratrix as a creditor of decedent, had become an ordinary creditor's claim presentable to the new administrator. We cannot agree that the decision on that point would or should have been different if the record had disclosed that the time for filing claims, as limited by the notice to creditors, expired six days after the claim was filed. We think the court held that there was but one claim which, after it became the claim of an ordinary creditor, was not barred by the transactions preceding its presentation in August, 1943.

*Rehearing denied.*