ELLA CASTOR,

*Plaintiff and Appellant,*

vs.

GLEN HENRY RICE, as Executor of the ESTATE of LEE RICE, DECEASED,

*Defendant and Respondent.*

(No. 2570; March 10th, 1953; 254 Pac. (2d) 189)

100

For the plaintiff and appellant the cause was submitted upon the brief of Greenwood, Ferrall & Williams, of Cheyenne, Wyoming, and also oral argument of Mr. A. Joseph Williams.

For the defendant and respondent the cause was submitted upon the brief of Jones & Jones, of Wheatland, Wyoming, and also oral argument of Mr. William R. Jones.

## OPINION

The case was heard before BLUME, C. J. and RINER and ILSLEY, J.

The following opinion was written by ILSLEY, J. before his death, in which opinion BLUME C. J. and RINER J., concur.

The plaintiff and appellant, Ella Castor, presented her creditor's claim in the sum of $15,180.00 against the estate of Lee Rice as and for the reasonable value of labor and services performed and rendered by her to and for the decedent Lee Rice and accepted by him, for the period of time from the year 1931 to the date of decedent's death on December 15, 1950. It was recited in plaintiff's claim that she, "rendered daily and continuously valuable services to decedent in keeping house, preparing and furnishing meals for decedent, doing the washing, ironing and mending of decedent's clothes, scrubbing, mopping, and waxing floors in decedent's living quarters and places of business, doing general cleaning of decedent's living quarters and places of business in both the town of Hartville, Wyoming, and the town of Guernsey, Wyoming, and run-

ning decedent's business for him at times when decedent was absent therefrom."

After allowing a credit of $500.00, the amount claimed to be due and owing was $14,680.00. The claim was rejected by Glen Henry Rice, who is the executor of the estate, and the claim was set forth in the petition of plaintiff and made the basis of this action against the executor, the defendant and respondent herein.

The defendant by way of a first defense entered his general denial and for the second defense alleges that about the year 1931 she moved, together with her son, Herbert, whose true name as shown by the evidence is Marvine, "into the home and place of abode of defendant's decedent and from that time until the death of said Lee Rice in December, 1950, continued to live with said Lee Rice, and that any services performed by plaintiff, Ella Castor, in keeping house, preparing meals, doing washing, ironing or other house work in the home of Lee Rice were wholly voluntary and performed and rendered by said plaintiff for the mutual benefit of herself, her son and said Lee Rice while living together in a family relationship and as members of the same household."

The case was tried to a jury resulting in a verdict for the defendant. A judgment was rendered on the verdict for defendant and the plaintiff appeals.

Plaintiff and appellant assign five specifications of error: (1) That the judgment is contrary to law; (2) That the same is contrary to the evidence; (3) That the judgment is not supported by any substantial evidence. We will consider the foregoing specifications of error together.

Specification of error number 4 has to do with the

sustaining of an objection to the introduction of evidence seeking to elicit an explanation in regard to plaintiff's claim for daily and continuous service. No offer of proof was made thereafter. The rule is that: "In the examination in chief the exclusion of testimony is not available as error unless the party makes an offer to prove the facts which he assumes that his question will elicit. Where an objection is properly interposed more must be done, in cases where the objection is sustained, than to ask the question; the party producing the witness and insisting upon the question must state what he proposes to prove by the witness." Casper Motor Co. vs. Marquis 31 Wyo. 115, 119, 223 P. 764.

Specification of error number 5 has to do with the overruling of an objection made by plaintiff to a question put to Mrs. Castor as to her making a claim or demand of Glen Henry Rice at a time before he was appointed executor of the estate. While the question may have been immaterial, it was harmless.

By a careful reading and an analysis of the evidence as disclosed in the record, we have constantly kept in mind the rules of this court as previously announced with respect to the conflict in testimony as viewed by appellate courts and as set forth in Willis vs. Willis, 48 Wyo. 403, 429, 49 P. (2d) 670; Eblen vs. Eblen 68 Wyo. 353, 366, 234 P. (2d) 434. In this case there is no conflict in the evidence on the main issues. It can very well be divided into two parts. First, the evidence covering the period of time from 1931 or 1932 to the winter of 1942. Second, the evidence covering the period of time from the winter of 1942 to December 15, 1950, the time when Lee Rice died.

With respect to the period of time from 1931 or 1932 to the winter of 1942 we find Ella Castor working for

Lee Rice, doing the household duties as described in her claim and in her petition but not *daily* and *continuously* as therein asserted. She readily admits that on or about the years 1936 to 1937 there was a period of two years when the services were intermittent. In that regard the plaintiff was asked:

"Q. You know for two years according to your own testimony, they were not daily and continuous services, isn't that correct?

"A. Well I expect it is."

The record shows that the plaintiff, to some extent at least, was on her own.

Without quoting at length from the testimony in the record we cannot say that the jury was wrong in deciding against the plaintiff for the period of time from 1931 or 1932 to the winter of 1942, although we do not believe that the plaintiff and her son, Marvin, were members of the family in the sense that plaintiff's services would be gratuitous. As we understand it, a family is a number of persons composing one household and generally speaking have one domestic government, the members thereof having reciprocal, natural or moral duties to support and care for one another. At least so the books tell us. 35 C.J.S. 737 et seq; Hay vs. Peterson 6 Wyo. 419, 45 P. 1073; Jones vs. Jones 146 Md. 19, 36 A.L.R. 672, 125 Atl. 722; Bixler vs. Sellman 77 Md. 494, 27 Atl. 137; Marx vs. Marx 127 Md. 373, 96 Atl. 544. The record does not disclose that a situation of that nature existed.

Counsel for plaintiff contend that, "an agreement to pay for services rendered and accepted is presumed unless the parties are members of the same family or near relatives." Hay vs. Peterson 6 Wyo. 419, 430, 45 P. 1073. Counsel for defendant assert that, "where one lives with another as a member of his household in a

family relation, the presumption which justifies an implied contract does not exist but the presumption arises that any services rendered were gratuitous." Citing 24 C.J.S. 282, Ratliff vs. Sadlier 299 P. 675, 676 and other cases.

As we have heretofore stated there is no conflict in the evidence on the main issues. Therefore it is not necessary to indulge in presumptions. As this court has said:

"It must be remembered that where there are facts presented then presumptions must give way." Kammerzell vs. Anderson, Wyo., 240 P. (2d) 893, 895; Hawkins vs. Loffland Bros., Wyo., 250 P. (2d) 498, 515. It is set forth in 31 C.J.S. 723: "Presumptions are indulged in only to supply facts and do not arise where facts are known."

In discussing the phrase "presumptions of fact" this court in Hoge vs. George 27 Wyo. 423, 450, 200 P. 96, 18 A.L.R. 469 stated:

"The phrase, 'presumptions of fact,' is of frequent occurrence in the books, but it is now well understood that, accurately speaking, there is no such thing as a 'presumption' of fact (4 Wigmore Ev. §2491), and the term should be discarded as useless and confusing. When used it can mean only inference of fact, or mere arguments which may or may not be acted upon by the jury."

The record shows that the decedent spent some time in jail in Wheatland, after which he worked in Casper and Torrington. While the record is not clear as to the time he spent in the last named places, it seems to us that the jury would be warranted in assuming that it was two or three years. Therefore, we think, on the record as a whole, that the verdict of the jury should be upheld, as to the period of time from 1931 or 1932

to the winter of 1942, and plaintiff's claim disallowed for that time. With respect to the remainder of the time i.e. from the winter of 1942 to December 15, 1950 we are of the opinion that a new trial should be granted, so that the jury may determine the validity of plaintiff's claim for that period of time. An order will be entered modifying the judgment as entered to the extent thus indicated. The reasons for this action follow:

A much different situation exists with respect to the time beginning with the fall or winter of 1942. Here again the evidence is clear and without conflict as to the main issues. The plaintiff was permitted to testify fully irrespective of the so-called "dead man's" statute Sec. 3-2603 W.C.S. 1945. Additionally Ada Lyons and Marvin Castor, plaintiff's son, by their evidence show that the deceased expressly promised to pay plaintiff for her services for that time. Marvin Castor was 27 years of age at the time of trial and when his mother, the plaintiff, started to work for decedent in 1931 or 1932 was 4 or 5 years old. As soon as he was 10 or 11 years of age he started to work for a grocery store at one time, a lumber yard at another time. He helped his mother when he went into the armed services of the United States, during which time and for about two years he sent his mother $36.00 each month. Marvin testified that in the fall of 1942 while he was going to school he remembers of hearing a conversation between Lee Rice and the plaintiff when Rice, the decedent, told his mother, the plaintiff, that he wanted her to move up to the apartment at the Smokehouse and work for him. Rice stated that he owed her money that he hadn't paid; that he would get it straightened out as soon as he could. The plaintiff said she would not go unless Rice would pay her and they had a definite understanding about her working for him.

Rice then said he would pay her $100.00 per month, whereupon Marvin and his mother moved to the apartment in the Smokehouse. Marvin was then 17 years old. The plaintiff from that time on worked for Lee Rice, cooking, cleaning, pressing clothes and general housework. She also worked for other people. Ella Castor, the plaintiff, in substance, testified to her agreement with the decedent, as related by her son; that she did "cooking, washing, ironing, mending, keeping the Smokehouse clean for Rice." The Smokehouse was a place of business where, "they played cards, had cigars, cigarettes, soft drinks." She testified her son sent her $36.00 each month of the eighteen months he was in the army; that Rice paid her approximately $500.00 on account.

Ada Lyons, a woman of mature years, testified that in the year 1949 the decedent told her, "I know I owe Mrs. Castor so much for wages I am ashamed at myself." In corroboration of this evidence Mrs. Marvin Castor testified that on the night before Lee Rice died at the Memorial Hospital in Casper he told Marvin (the witness' husband), "to get a good lawyer and get some money out of this for his mother."

It is to be noted that while the record shows that plaintiff and her son lived under the same roof with the decedent for many years, it is admitted that there is no question of the relationship being of a meretricious character. If such had been the situation, the case of Willis vs. Willis 48 Wyo. 403, 49 P. (2d) 670 would be an authority, because there it was held where parties knowingly entered into illegal cohabitation a woman plaintiff was not entitled to recover reasonable value of her services in taking care of defendant's rooming house and working in his cabaret, as against contention that, notwithstanding their relation was illicit, plaintiff was entitled to compensation for serv-

ices which were not incidental to such relationship. Here the action is brought to recover for the reasonable value of labor and services performed. However, proof was submitted both as to an express contract for services and also as to the reasonable value of the labor and services performed. This is proper and permissible.

It was held in Hecht vs. Stanton 6 Wyo. 84, 42 P. 749, that in an action for work and labor based upon a quantum meruit, and the contract under which the work was being done being set up as a defense, it is not necessary that a recovery be had upon the quantum meruit, or not at all. See also E. D. Metcalf Co. vs. Gilbert 19 Wyo. 331, 116 P. 1017; Phelan vs. Cheyenne Brick Co. 26 Wyo. 493-505, 188 P. 354, 7 C.J.S. 116 §9.

Plaintiff argues that the defendant in his second defense in the answer admits plaintiff did housekeeping, prepared meals, did washing, ironing or other work for Lee Rice and seeks to avoid liability by contending a family relationship existed relieving the defendant from liability. That the burden of proof was upon the defendant to establish the existence of a family relationship. Defendant strenuously claims that no such admission can be found in defendant's answer and that the burden of proof has always been upon the plaintiff under the pleadings. Perhaps both plaintiff and defendant are right. Sections 3-1311, 3-1312 W.C.S. 1945 recite what an answer may contain. The answer herein is in the nature of one confessing and avoiding or one setting up new matter. In 71 C.J.S. 339 Section 164b, "A plea in confession and avoidance or an answer setting up new matter as a defense should allege facts which are sufficient to defeat the plaintiff's right to recover." And again, id., section 165, "Generally speaking, pleas or answers by way of confession and avoidance must give color, that is, they must confess an

apparent or prima facie right of action in the plaintiff or confess or admit the allegations which it is sought to avoid."

Under the title Pleading 41 Am. Jur. 403 §158 we find: " * * * The element of confession in such a plea is as essential as that in avoidance. The plea must avoid, and the avoidance must be pleaded coextensively with the confession, and be an answer to the whole of what is adversely alleged. * * * "

See 41 Am. Jur. 400 §155. Citing First National Bank vs. Ford 30 Wyo. 110-123, 216 P. 691, 31 A.L.R. 1441, wherein this court discusses a plea in confession and avoidance. In First National Bank vs. Ford, supra, this court also discussed the question of burden of proof. Holding in effect that the burden of proof never shifts, though the burden of going forward with the evidence may shift at various times from one side to the other, as evidence is introduced by the respective parties. In other words, the burden of proof is on the party asserting the affirmative of a proposition and when that proposition is denied the party denying the same does not at any time have this burden.

The situation presented in the instant case is not unlike, on principle at least, the claim of Barbara Roberts presented in the case of Roberts vs. Roberts 64 Wyo. 433, 196 P. (2d) 361. In that case as in this case the continuity of employment was broken. (See p. 448). This court held that both parties in Roberts vs. Roberts supra honestly believed that they were married by a ceremony amounting to a common law marriage, although in the case of Roberts vs. Roberts 58 Wyo. 438, 133 P. (2d) 492, it was found that a common law marriage did not exist between these parties. So in Roberts vs. Roberts reported in 64 Wyo. 433 supra it was found that Barbara Roberts was en-

titled to recover upon either an express or implied contract because she performed services for her putative husband upon the honest mistaken belief that she was married and was, therefore, entitled to recover.

In this case there is no element of fraud, no meretricious relationship, and no good reason shown why the plaintiff and her son should not live in the same house with the decedent and at the same time the plaintiff should not perform work and labor for Lee Rice, the decedent. We do not know just what reasons the jury had which impelled them to return the verdict herein. It may be that the jury thought the claim presented was too large and ran over too long a period of time. If so, by the elimination of plaintiff's claim for services from 1931 or 1932 to 1942 as above indicated, the issues will be simplified upon a new trial.

The judgment entered will be modified by eliminating all claims for services for the years 1931 or 1932 to the year 1942 and a new trial is ordered to determine the validity and amount of plaintiff's claim for services for the years commencing with the winter of 1942 to December 15, 1950, the date of Lee Rice's death.

Reversed in part.